[No. B158840. Second Dist., Div. Eight. May 14, 2007.]

CONSUMER ADVOCACY GROUP, INC., et al., Plaintiffs and Appellants,
v.
KINTETSU ENTERPRISES OF AMERICA et al., Defendants and
Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of: (1) the paragraph of the Introduction which begins "The fourth appeal concerns . . ."; the last sentence of the Introduction which begins "We affirm the entry of summary judgment . . ."; (2) the first paragraph of the Factual and Procedural Background I; (3) the conclusion of Discussion I; (4) Factual and Procedural Background II; (5) Discussion II; and (6) the first sentence of the Disposition.

954

## COUNSEL

Yeroushalmi & Associates, Daniel D. Cho, Reuben Yeroushalmi and Daniel J. Hartman for Plaintiff and Appellant Consumer Advocacy Group, Inc.

Graham & Martin, Anthony G. Graham, Michael J. Martin for Plaintiff and Appellant Consumer Defense Group.

Girardi & Keese and James G. O'Callahan for Center for Biological Diversity as Amicus Curiae on behalf of Plaintiffs and Appellants.

Caldwell Leslie Newcombe & Pettit, Michael R. Leslie and Suzanne Royce for Defendant and Respondent Texaco Refining & Marketing, Inc.

Weston Benshoof Rochefort Rubalcava & Maccuish, Kurt Weissmuller and Stephanie A. Jones for Defendants and Respondents Hotel Sofitel, Accor North America, Amerihost, Kintetsu Enterprises Company of America, ARCO and ExxonMobil.

Gibson, Dunn & Crutcher, Scott A. Kruse and Patrick A. Dennis for Defendants and Respondents Wyndham International, Inc., and Patriot American Hospitality, Inc.

Allen Matkins Leck Gamble & Mallory, Anthony J. Oliva and Andrew Miller for Defendants and Respondents Extended Stay, Studio Plus, Interstate Hotels and Crossroads Hospitality LLC.

Gray Cary Ware & Freidenrich, DLA Piper Rudnick Gray Cary US and Robert C. Longstreth for Defendants and Respondents Rite Aid Corporation and the Westgate Hotel.

Latham & Watkins, Betty-Jane Kirwan, Michael G. Romey and Patricia K. Tegart for Defendants and Respondents La Quinta Corporation, La Quinta Inns, Inc., La Quinta Properties, Inc., Pacifica Hotel Company, Doubletree Hotels, Embassy Suites, Hampton Inn, Red Lion, Club Hotel, Promus Hotel Corporation and Hilton Hotels Corporation.

Jeffer Mangels, Butler & Marmaro, Malcolm C. Weiss, David P. Waite and Hal D. Goldflam for Defendants and Respondents Chhatrala Hotel Group, Rim Corporation, and Rim Hotel Group, LLC.

Stringfellow & Associates and Lisa Schwartz Tudzin for Defendant and Respondent Premium Cigars International, Ltd.

Assayag Mauss and Kathryn L. Kempton for Defendants and Respondents DKN Hospitality Group and Tarsadia Hotels.

Law Offices of Thomas P. Sayer, Jr., and Thomas P. Sayer for Defendant and Respondent Pacifica Host.

Smith Smith & McFaul and E. Gary Smith for Defendant and Respondent Saga Motels, Inc.

Nossaman Guthner Knox & Eliott, Carol Rene Brophy and Michele A. Boddy for Defendants and Respondents Dawn Dee Motel & Apartments, E-Z 8 Motels, Inc., Dazzio Corporation, Sterling Hotels Corporation, Valley Ho Hotels, Inc., and Vasona Management, Inc.

Thomas Whitelaw & Tyler and J. Russell Tyler for Defendant and Respondent Sunstone Hotel Properties.

Seyfarth Shaw, William H. Lancaster and Damon C. Anastasia for Defendants and Respondents 7-Eleven, Inc., Wal-Mart Stores, Inc., Sam's Club, Circle K Stores, Inc., and Tosco Corporation.

Law Offices of Kenneth E. Chyten and Kenneth E. Chyten for Defendant and Respondent Good Nite Inn, Inc.

Squire, Sanders & Dempsey, Kevin T. Haroff and Suzanne Henderson for Defendant and Respondent Best Western International, Inc.

Ball Janik and Brad T. Summers for Defendant and Respondent Shilo Management Corporation.

Spolin Silverman Cohen & Bartlett, Theodore J. Cohen and C. Brent Parker for Defendants and Respondents Vagabond Inns, Vagabond, Inc., and Imperial Hotels.

Kaye Scholer and Jeffrey S. Gordon for Defendant and Respondent The Beverly Hills Hotel.

OPINION

**COOPER, P. J.—**

### INTRODUCTION

Pursuant to the order of the Supreme Court of California, we vacated our opinion filed May 17, 2005. We hereby issue the following opinion which considers *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 [46 Cal.Rptr.3d 57, 138 P.3d 207] and *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 [46 Cal.Rptr.3d 66, 138 P.3d 214].

Three of the four consolidated appeals require us to apply Health and Safety Code section 25249.7 and California Code of Regulations, title 22, section 12903 (section 12903) to review the notice served by Consumer Advocacy Group, Inc. (CAG), on hundreds of hotels and retail establishments. In its notice, CAG alleged that respondents violated Proposition 65 by exposing individuals to secondhand smoke, tobacco, and tobacco products without providing a reasonable warning. Respondents persuaded the trial court that CAG's notices were overbroad and therefore invalid. As a result, the court dismissed CAG's numerous complaints.

We hold that notice, for purposes of Proposition 65, must be specific and must inform the targeted hotels and retail establishments and the public prosecutor of the nature of the alleged violation. The inclusion of superfluous material in the notice does not invalidate an otherwise lawful notice. However, notice that is so broad it renders the specific violation impossible to discern fails to achieve its function. It neither affords the hotels and retail establishments an opportunity to cure a violation nor provides the public prosecutor the means to meaningfully investigate the alleged violations.

In addition to alleging violations of Proposition 65, CAG also alleged respondents violated Business and Professions Code section 17200 et seq., also known as the unfair competition law (UCL). We reject CAG's argument that it may pursue its UCL claims—which are based on the identical allegations as its Proposition 65 claims—regardless of the validity of the notice required by Proposition 65. We conclude that Proposition 64, which amended the requirements for standing to bring a UCL action, applies to CAG, even though the case was pending prior to the passage of Proposition 64.

*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 953.

We affirm the judgment of dismissal in favor of the respondents upon which CAG served invalid notice. We reverse the judgment of dismissal in favor of those respondents upon which CAG served valid notice.[*]

## FACTUAL AND PROCEDURAL BACKGROUND I (CAG APPEALS)[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CAG describes itself as an organization acting in the public interest to enforce the Proposition 65 warning requirements. Center for Biological Diversity is amicus curiae in support of CAG. Respondents in the three CAG appeals are numerous hotels and retail establishments.

The subject of these appeals are CAG's Proposition 65 notices alleging consumer product, environmental and occupational exposures to tobacco smoke and tobacco products. A "consumer product" exposure "is an exposure which results from a person's acquisition, purchase, storage, consumption, or other reasonably foreseeable use of a consumer good, or any exposure that results from receiving a consumer service." (Cal. Code Regs., tit. 22, § 12601, subd. (b).) An "occupational exposure" is "an exposure, in the workplace of the employer causing the exposure, to any employee." (Cal. Code Regs., tit. 22, § 12601, subd. (c).) An "environmental exposure" is "an exposure which may foreseeably occur as the result of contact with an environmental medium, including, but not limited to, ambient air, indoor air, drinking water, standing water, running water, soil, vegetation, or manmade or natural substances, either through inhalation, ingestion, skin contact or otherwise." (Cal. Code Regs., tit. 22, § 12601, subd. (d).)

CAG served its first set of notices alleging violations of Proposition 65 in August 1998. (*Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 743 [106 Cal.Rptr.2d 332] (*Miramar*).) That first set of notices was held invalid by Division Four of this court in *Miramar*. (*Id.* at p. 738.) While that appeal was pending, CAG served a second set of notices. The trial court initially found the allegations of consumer product exposures in CAG's second set of notices were sufficient. Yet it found the claims of occupational and environmental exposures were overbroad and therefore invalid.

CAG then served a third set of notices on many, but not all, of the same respondents. Respondents served with the third set of notices, like those served with the second set of notices, moved for judgment on the pleadings

[*]See footnote, *ante*, page 953.

or filed demurrers. A new judge considered CAG's second and third set of notices. This time, the judge found that both sets were invalid in their entirety primarily because the allegations were too general. Subsequently, the court entered several judgments of dismissal, dismissing CAG's complaints. CAG filed three notices of appeal from the judgments, some of which concern the same respondents.[1]

In addition to dismissing the case, the court granted a motion for sanctions brought by Comfort Inn Santa Monica, E-Z 8 Motels, Inc., Kings Inn, R&R Hotel Group, Ramada Maingate-Saga Inn, Sterling Hotels, and Vasona Management Company. The court found, "Plaintiff offered no evidence of any investigation or documentation supporting claims asserted in the 60-Day Notices or in the Complaints." It refused to consider an untimely declaration. Counsel was ordered to pay sanctions of $750. CAG did not appeal from the order awarding sanctions.[2]

## DISCUSSION I (CAG APPEALS)

Whether Proposition 65 notice complies with the statutory requirements is reviewed de novo. (*Miramar, supra,* 88 Cal.App.4th at p. 744.) We begin with background information regarding Proposition 65. We then consider respondents' argument that CAG's notice is invalid due to overbreadth. Finding that the notice is invalid only where the overbreadth renders it impossible to discern the specific violation, we consider exemplar notices to apply this rule. We then discuss issues raised by a subset of respondents including (1) the severability of those San Jose located respondents due to CAG's failure to serve the San Jose City Attorney; (2) the effect of the postjudgment sanctions award; and (3) the statute of limitations as applied to Good Nite Inn. Finally, we consider the viability of CAG's causes of action under Business and Professions Code section 17200 et seq.

---

[1] On April 22, 2002, the trial court entered a judgment dismissing numerous defendants. On October 23, 2002, the court dismissed the claims against the defendants whose notices it previously determined were inadequate. By separate judgment, the court dismissed Interstate Hotels, LLC, and Crossroads Hospitality, LLC. On March 21, 2002, and February 7, 2003, the court entered a judgment of dismissal. CAG filed three separate notices of appeal from these judgments.

[2] We deny CAG's request for judicial notice filed December 27, 2002, and CAG's request for judicial notice filed November 25, 2004. The declaration of CAG's counsel presenting information outside the record is not a proper subject of judicial review. The documents relevant to the *Miramar* case are not relevant to resolving the issues in the current appeal. We grant Rite Aid's motion to augment the record filed July 21, 2004. We accept all joinder requests, including the one filed after the case was submitted.

I. *Background*

■ In 1986, voters passed Proposition 65, which was designed to warn the public of harmful exposures to chemicals. (Ballot Pamp., Gen. Elec. (Nov. 4, 1986) analysis of Prop. 65 by the Legislative Analyst, p. 52.) The resulting Health and Safety Code[3] section 25249.6 provides· in pertinent part: "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the ·state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . ." (§ 25249.6.) The statute may be enforced by the Attorney General and certain city attorneys or, if specified conditions are satisfied, by a citizen.

When this litigation began, section 25249.7 described the prerequisites for citizen enforcement of Proposition 65: "Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation." (Former § 25249.7, subd. (d).)[4]

■ Notice, the key to due process and the crux of the present appeal, is required before property interests may be disturbed or penalties assessed. (*Lambert v. California* (1957) 355 U.S. 225, 228 [2 L.Ed.2d 228, 78 S.Ct. 240].) Notice is a mandatory precondition to a lawsuit brought by a citizen to enforce Proposition 65, the outcome of which may result in severe penalties. (§ 25249.7, subd. (b)(1); Cal. Code Regs., tit. 22, § 12903; see also Off. of Environ. Health Hazard Assessment, Final Statement of Reasons, Adopting Section 12903, Notices of Violation (1997) ["[s]uch influence over whether or not penalties will be collected for the public treasury is not to be taken lightly. As a condition precedent to establishing a citizen's right to proceed in the public interest on that matter, and to collect funds for the public treasury, the notice requirement should not be dismissed as a mere technicality"].) Notice serves dual purposes. It provides the public prosecutor the means to

---

[3] Except for section 17200, which refers to the Business and Professions Code, and section 12903, which refers to Title 22 of the California Code of Regulations, undesignated statutory citations are to the Health and Safety Code.

[4] This is the statute as amended in 1999. It was again amended in 2001 as discussed in the text. Subsequent amendments are not relevant to this case.

assess whether to intervene on behalf of the public. It further affords the accused an opportunity to forestall litigation by settling with the plaintiff or by curing any violation. (*Miramar*, *supra*, 88 Cal.App.4th at p. 748.)

The requirements of Proposition 65 notice are further described in California Code of Regulations, title 22, section 12903. General requirements must be included regardless of the type of violation and specific requirements for consumer product, environmental and occupational violations are also described. These requirements "shall not be interpreted to require more than reasonably clear information, expressed in terms of common usage and understanding, on each of the indicated topics." (§ 12903, subd. (b)(2).) Subdivision (b) lists the general requirements: a specified attachment summarizing Proposition 65; description of the violation; the name of the noticing entity; the name of the alleged violator; the approximate time period for the violation; the name of each chemical involved in the alleged violation; and the route of exposure.

For notices involving consumer product exposures, the notice must include the specific type of consumer product or services that caused the violation, " 'with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged.' (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2)(D).) [¶] Notices involving occupational exposures must include the general geographic location of the exposure to employees, or if many locations, a description of the occupation or type of task performed by the exposed persons. [Citation.]" (*Miramar*, *supra*, 88 Cal.App.4th at p. 745.) And, "[n]otices involving environmental exposures must identify the location of the source of the exposure, or where numerous sources of the exposure are alleged, a description of the common characteristics that result in the exposure, 'in a manner sufficient to distinguish those facilities or sources from others for which no violation is alleged.' (§ 12903, subd. (b)(2)(F).) The notice must also state whether the environmental exposure is occurring beyond the property owned or controlled by the alleged violators. [Citation.]" (*Miramar*, *supra*, at p. 746.)

The California Code of Regulations, title 22, section 12903 requirements were applied in *Miramar*, *supra*, 88 Cal.App.4th 738, which involved several of the same respondents. Division Four of this court found CAG's first set of notices were invalid. *Miramar* unequivocally held that "[a] notice which

merely alleges that there was tobacco smoke or a cigar somewhere on or off one or more of the alleged violator's business premises, exposing the public and all classes of employees in a given city to toxins sometime during a four-year period, gives no notice at all." (*Id.* at p. 750.) The court faulted CAG's consumer product notice for containing "no allegation in the notice of any of the enumerated activities." (*Id.* at p. 747.) Notice naming only the harmful substance and alleging that exposure occurred through " 'inhalation, ingestion, and dermal contact' " failed to give sufficient information to discern the violation. (*Ibid.*) "Neither settlement nor an official investigation is likely to result from a pro forma notice that the citizen intends to sue in 60 days for any violation relating to tobacco smoke or cigars that discovery might turn up." (*Id.* at p. 750.)

In 2001, the Legislature amended section 25249.7 to require a citizen who brings a lawsuit to include a certificate of merit "executed by the attorney for the noticing party . . . . The certificate of merit shall state that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action." (§ 25249.7, subd. (d)(1).) At the conclusion of the lawsuit, the court may review the basis for the certificate of merit and, if it is frivolous, may award sanctions in favor of the defendant. (§ 25249.7, subd. (h)(2).)

The effective date of the certificate of merit requirement was January 1, 2002. (*DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 971, fn. 3 [14 Cal.Rptr.3d 787].) No argument is made that CAG failed to provide a certificate of merit before commencing litigation once the amendment was effective. Therefore, in discussing the adequacy of CAG's notice, we need not further consider this requirement.

II. *Overbreadth*

Respondents' overarching argument is that the overbreadth of CAG's notices invalidates them. According to respondents, just as in *Miramar,* the notices in this case give no notice. CAG cannot reasonably dispute respondents' claim that its notices are overbroad because none is narrowly tailored to a specific respondent. As a result, a hotel having no swimming pool,

chauffeur or internal hallways may have received notice that smoking was occurring in these locations without an adequate warning. In addition, as in *Miramar*, many notices state that the route of exposure is through "inhalation, ingestion, and dermal contact."

 Standing alone, overbreadth, even where substantial, does not demonstrate that the notices are invalid. Instead, the key queries are (1) whether the requirements of California Code of Regulations, title 22, section 12903 are satisfied; (2) whether the notice is sufficiently specific to permit the Attorney General and the accused a meaningful opportunity to investigate; and (3) whether the notice is sufficiently specific to permit the accused a meaningful opportunity to cure. While broad language arguably may increase the burden on both the public prosecutor and the accused, that result is not automatic. For example, a hotel lacking a pool incurs no additional burden when it receives notice it failed to provide reasonable warnings in a pool area. The hotel is justified in concluding that it is not required to take any action with respect to a nonexistent pool. Thus, where an alleged violation is clear and specific, the existence of extra, inapplicable violations does not, without more, render the notice invalid.

In contrast, notice that identifies possible but unclear and general violations makes it impossible for the recipient to understand the specific violation. For example, the *Miramar* court explained that alleging exposure through " 'inhalation, ingestion, and dermal contact,' in nearly the exact words of the regulation . . . suggest[s] that the violation consisted of contact, but state[s] no facts describing how the contact occurred, and neither the dates of exposure (a period of years) [n]or the description of persons exposed (every general class of employee respondents might have) provide any clarification." (*Miramar, supra,* 88 Cal.App.4th at p. 747, citation & italics omitted.) The failure of the notice to identify the route of exposure led the court to speculate that CAG intended to allege that the route of exposure was through contact. However, CAG's third set of notices indicates the route of exposure is through inhalation. The court, like the *Miramar* respondents and the public prosecutor, was unable to understand the overly broad notice.

Just as overbreadth does not per se invalidate the notice, overbreadth does not necessarily demonstrate a failure to investigate as respondents imply.[5] CAG's generic notice does not reveal the lack or existence of an investigation. A plaintiff may conduct an indepth investigation and provide deficient

---

[5] For example, in their joint brief, respondents argue that "[i]t is clear from CAG's generic notices that CAG undertook no such efforts" to investigate the "alleged violations prior to issuing a notice of intent to sue." Good Nite Inn implies that if CAG had investigated it would have more narrowly tailored the notice to describe each individual property. The San Jose defendants argue that CAG's practice of serving boilerplate notice raises the inference that no investigation was done and that "such abuses underline the need to enforce the notice

notice, or may conduct no investigation but clearly describe a specific violation. The adequacy of the notice and of the investigation are separate issues. Conflating the two issues undermines the purpose of each. Specific notice may overshadow the requirement that a pleading must be certified to have evidentiary support (*Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 82 [86 Cal.Rptr.2d 846, 980 P.2d 398]) or a poorly drafted notice may hide a first-rate investigation.

## III. *Second Set of Notices Served on Hotels*

We discuss separately the sufficiency of the notice of environmental, occupational, and consumer product exposures. Then we consider respondents' arguments that CAG failed to satisfy some of the general requirements.

### A. *Environmental Exposures*

In the notice served on Amerihost Properties Inc., CAG alleged that, over a four-year period, "the violator has been and is knowingly and intentionally exposing its customers and the public to tobacco smoke and other chemicals listed below and designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to the exposed persons (Health & Safety Code Section 25249.6). The sources of exposures are tobacco smoke and other chemicals listed below. The locations of the exposures are inside limousines and cars the hotels provide as complimentary or charged, also the lobbies, corridors and hallways of floors where guest rooms designated for smokers are located, areas adjacent to pools and entrances, smoking rooms, and guest rooms designated for smoking at: [¶] The locations in the attached Exhibit A." (Boldface and italics omitted.)

Respondents argue that the notice lists "broad categories of locations in which exposures could take place, without differentiating among the hotel facilities designated on the list of locations attached to the notice." According to respondents, "[b]ased on CAG's notices, one must . . . unrealistically assume that each of the hotel locations has each of the areas listed in the notice, and that smoking is actually permitted in these areas."

In contrast to the notices in *Miramar*, where CAG stated only that the " 'exposures occurred on and beyond property owned and controlled by the violators,' " here CAG specified multiple locations of exposure. (*Miramar, supra,* 88 Cal.App.4th at p. 742.) Respondents' principal argument is not that

requirements of Proposition 65, and demonstrate the problems that would arise if the type of generic boilerplate notices at issue in this case were permitted."

the locations are unintelligible but that they are inapplicable to each respondent's property for a different reason. Contrary to respondents' contention, there is no need to assume that each hotel location has the areas listed and permits smoking in those areas. Instead, the relevant question is how the notice applies to each respondent, i.e. which alleged violations are applicable and which should be excised.

The problem with this notice of environmental exposures, however, is that just as in *Miramar*, CAG failed to specify the route of exposure. Like in *Miramar*, CAG stated only that "[t]he route of exposure for Occupational Exposures and Environmental Exposures to the chemicals listed below has been inhalation, ingestion and dermal contact." CAG's broad statement, which essentially parrots the regulation, makes it difficult to discern the specific violation. Thus, while respondents' argument goes too far in claiming that the notice is invalid because not all of the alleged violations are applicable, there is merit to respondents' argument that the failure to specify a route of exposure makes it difficult to understand the specific violation and, for that reason, invalidates CAG's notice of environmental exposures.

### B. *Occupational Exposures*

In its notice served on Amerihost Properties Inc., under the heading "occupational exposures," CAG alleges: "While in the course of doing business . . . [over a four-year period], the violator has been and is knowingly and intentionally exposing employees of the violator to tobacco smoke and other chemicals listed below and designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to the exposed person (Health & Safety Code Section 25249.6). The sources of exposure include tobacco smoke and other chemicals listed below at: [¶] The locations in the attached Exhibit A. [¶] The employees exposed to said chemicals include but are not limited to bartenders, cashiers, waiters, waitresses, cooks, security personnel, maintenance workers, service personnel, entertainment providers, limousine drivers and chauffeurs. Such exposures took place inside limousines and cars provided by the hotels as complimentary or charged, in the lobbies, smoking rooms, guest rooms designated for smoking, and hallways of the floors where rooms designated for smoking are located at the following locations: [¶] The locations in the attached Exhibit A." (Boldface and italics omitted.)

Respondents argue CAG "merely provide[s] a laundry list of virtually every conceivable kind of hotel occupational category, without regard to whether each of the over 500 noticed locations, many of which are motor lodges with limited facilities, employ all of the classes of employees listed above. Nor do they provide any information regarding which classes of

employees were being exposed at each of the noticed locations." Respondents argue *Miramar* found similar notices were inadequate.

*Miramar* focused primarily on the problems with CAG's allegations of consumer product exposure and, in a footnote, noted that CAG also alleged occupational and environmental exposures. (*Miramar*, *supra*, 88 Cal.App.4th at p. 747, fn. 6.) *Miramar* did not hold that listing multiple employees necessarily results in invalidity of the notice, but rather where every class of employee is identified, it may cause difficulty in understanding the nature of the violation. In the *Miramar* case, it made it impossible to understand the nature of the violation. (*Id.* at pp. 747, 750.)

The mere claim that the notices are overbroad is insufficient to demonstrate their invalidity. The statement that the exposures occurred inside vehicles provided by the hotels, lobbies, smoking rooms, and certain hallways suffices to identify the "general geographic location of the unlawful exposure to employees" as required by California Code of Regulations, title 22, section 12903, subdivision (b)(2)(E)(1). CAG's use of phrases, such as "including, but not limited to" and "regardless of occupation," cannot extend the parameters of notice because the phrases identify no occupation. While such broad language is not helpful, it does not invalidate CAG's notice in its entirety. However, just as with its allegations of environmental exposure, the problem with CAG's allegations of occupational exposure lies in its description of the route of exposure through inhalation, ingestion, and dermal contact.

### C. *Consumer Product Exposure*

In the notice served on Doubletree Hotels, Embassy Suites, Hampton Inn, Red Lion, Club Hotel, and Promus Hotels Corporation, CAG stated that, over a four-year period, "the violators have been and are knowingly and intentionally manufacturing cigars and selling cigars and smokeless tobacco in the gift shops, restaurants and bars and concessionaires at: [¶] The locations in the attached Exhibit A. [¶] and [*sic*] exposing consumers and the public to tobacco smoke and tobacco and other chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning . . . . The sources of exposures are tobacco smoke, and cigars and smokeless tobacco sold at the locations set forth in the above. . . . The sale, purchase, consumption and the reasonably foreseeable use of cigars and smokeless tobacco result in exposures through inhalation, ingestion, and dermal contact to the chemicals listed below. [¶] Purchasers of the violators' cigars lit them, smoked them and inhaled the chemicals listed below at the consumers' place of residence, work, and leisure. Consumers also smoked cigars purchased from the violators and inhaled the chemicals

listed below off the violator's premises and inside the rooms designated for smokers . . . , inside limousines and cars the hotels provide as complimentary or charged, also areas adjacent to pools and entrances, smoking rooms, and guest rooms designated for smoking at: [¶] The locations in the attached Exhibit A." (Boldface and italics omitted.)

With respect to cigars, CAG alleges sufficient information to understand the violation and the route of exposure with the following language: the purchasers lit the cigars, smoked them, and inhaled the chemicals in specified locations. However, with respect to smokeless tobacco, no information describes the specific violation. Thus, CAG has given sufficient notice of a consumer product violation based on cigars. The recipient of the notice may distinguish cigars from other products it sold as required by California Code of Regulations, title 22, section 12903, subdivision (b)(2)(D).

In the notice served on Shilo Inns, CAG states that "[p]urchasers of the violator's tobacco products lit them, smoked them, inhaled, or otherwise were exposed to the chemicals listed below . . . . Consumers also smoked tobacco products purchased from the violator and inhaled the chemicals listed below . . . ." The use of the term "tobacco products" is unclear. The term does not permit the recipient of notice to understand "the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged" as required by California Code of Regulations, title 22, section 12903, subdivision (b)(2)(D). The term "tobacco products" encompasses a wide variety of products and therefore does not give the hotel sufficient notice because it is impossible to discern which product CAG alleges was sold in violation of the required warnings.

### 1. *Res Judicata*

In their joint brief, respondents argue that "[a]s a result of previous legal proceedings involving Proposition 65 requirements applicable to the sale of cigars, it is particularly important that CAG specifically identify the brands of cigars for which violations are alleged." The record includes a 1988 stipulated judgment requiring placement of warnings on certain cigars and an order of the Federal Trade Commission requiring cigar warnings.[6]

---

[6] The consent judgment required the following warning: "WARNING: This Product Contains/Produces Chemicals Known To The State Of California To Cause Cancer, And Birth Defects Or Other Reproductive Harm[.]" The judgment indicates it is "full and final" as to judgment defendants only and applies to claims for violations of section 25249.6, Proposition 65, and the UCL. "This Judgment, however, does not affect the People's rights against any retailer or other person or entity not a party to this Judgment, or concerning the sale of products other than Tobacco Products."

Respondents' argument is not persuasive. The requirements for notice in Health and Safety Code section 25249.7 and California Code of Regulations, title 22, section 12903 are not dependent on the existence of other judgments. Stated otherwise, CAG's burden with respect to notice is not altered due to a stipulated judgment or Federal Trade Commission order. CAG is not required to anticipate every possible defense in its notice. Section 12903, subdivision (b)(4)(D) expressly provides that "[f]or products, the UPC number, SKU number, model or design number or stock number or other more specific identification of products" is not required. To the extent respondents' argument may be understood to mean that the term cigar is too broad because some cigars contained warnings, the overbreadth does not make the notice so unclear as to invalidate it.

7-Eleven, Wal-Mart Stores, Inc., Sam's Club, Circle K Stores, Inc., and Tosco Corp. argue the stipulated judgment is res judicata and bars the present litigation against them. The obvious problem with the argument is that the stipulated judgment was limited to the parties in that case. The judgment expressly provides: "This Judgment, however, does not affect the People's rights against any retailer or other person or entity not a party to this Judgment, or concerning the sale of products other than Tobacco Products." The 1988 judgment included the following retail establishments, none of which are parties to this case: Albertson's Inc., Alpha Beta Co., Lucky Stores Inc., Raley's, Ralphs Grocery Co., Safeway Stores Inc., Thrifty Drug and Discount Stores, and Vons Grocery Co.

## 2. *Duty To Warn*

7-Eleven, Wal-Mart Stores, Inc., Sam's Club, Circle K Stores, Inc., and Tosco Corp. also argue they have no duty to warn of exposures beyond their control. The sole legal support they cite is section 25249.11, which provides in pertinent part: "[i]n order to minimize the burden on retail sellers of consumer products including foods, regulations implementing Section 25249.6 shall to the extent practicable place the obligation to provide any warning materials such as labels on the producer or packager rather than on the retail seller, except where the retail seller itself is responsible for introducing a chemical known to the state to cause cancer or reproductive toxicity into the consumer product in question." (§ 25249.11, subd. (f).) The statute does not indicate that a retail defendant is always shielded from liability as these respondents argue. Because these respondents provide no additional argument on this issue and this potential defense does not concern the adequacy of CAG's notice, we do not further consider it in the context of this appeal.

D. *General Requirements*

In addition to specific requirements for each violation, Proposition 65 notices must also satisfy general requirements codified in California Code of Regulations, title 22, section 12903.

### 1. *Identification of Noticing Individual and of Alleged Violator*

First, the notice must identify the noticing party, and the satisfaction of this requirement is not disputed. Second, the notice must identify the violator and, with the exception of the Circle K entities, this requirement is not disputed.

Circle K Stores, Inc., was erroneously sued as Circle K Co., and Circle K. Citing no legal authority, it argues that the notice was insufficient because it was incorrectly named. Circle K Stores, Inc., appeared in this action, and filed a demurrer, which eventually resulted in a dismissal. In doing so, it forfeited the argument that the notice was not sufficient because the wrong entity was named. This is analogous to a defendant who has actual knowledge of an action and submits to the authority of the court. That defendant cannot assert a violation in the service of summons, the purpose of which is to provide the defendant with knowledge of the lawsuit. (*Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1148 [8 Cal.Rptr.3d 446].) An appearance for contesting personal jurisdiction " ' "is purely a dilatory plea, and when a defendant seeks to avail himself of it, he must . . . stand upon his naked legal right and seek nothing further from the court than the enforcement of that right." ' " (*Ibid.*, quoting *Raps v. Raps* (1942) 20 Cal.2d 382, 385 [125 P.2d 826].) By seeking a dismissal on grounds other than personal jurisdiction, Circle K Stores, Inc., forfeited its right to contest the notice on the ground that it was improperly named.

### 2. *Identification of Each Chemical Involved in the Alleged Violation*

The notices must identify the chemicals that are the subject of the violation. (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2)(A).) Respondents point out that some of the notices identify smokeless tobacco and cigars, but do not differentiate the chemicals in each product. CAG responds that the chemicals are the same, and neither side provides us with sufficient information to determine this issue. CAG may proceed only with respect to those chemicals contained in the notice. To the extent they are the same, no need exists to list them twice.

### 3. Identification of the Approximate Time Period

Respondents' more significant argument is that the four-year time period does not adequately identify the "approximate time period during which the violation is alleged to have occurred" as required by California Code of Regulations, title 22, section 12903, subdivision (b)(2)(A)(3). In the context of this lawsuit, the nondelineated time period is sufficient to describe the "approximate" time period. While every exposure without a reasonable warning is a separate wrong under the statute, it is impossible to precisely identify the time of each exposure.

This conclusion is similar to that reached by federal circuit courts applying the Clean Water Act, which also requires notice before a citizen initiated lawsuit. In *San Francisco Baykeeper, Inc. v. Tosco Corp.* (9th Cir. 2002) 309 F.3d 1153, notice stating that the defendant "was responsible for illegal discharges 'on each day when the wind has been sufficiently strong to blow coke from the piles into the slough'" was sufficient to identify the time period. (*Id.* at p. 1159.) The court reasoned that the language of the notice was sufficiently specific to inform the defendant of what it was doing wrong and to allow it to cure the violation. (*Ibid.*) Similarly, in *Public Interest Research Group v. Hercules, Inc.* (3d Cir. 1995) 50 F.3d 1239, the Third Circuit rejected an argument that the plaintiff alleging a violation of the Clean Water Act (33 U.S.C. § 1251 et seq.) must allege the date of each violation in the notice. "While there is no doubt that such detailed information is helpful to the recipient of a notice letter in identifying the basis for the citizen suit, such specificity is not mandated by the regulation. The regulation does not require that the citizen identify every detail of a violation." (*Public Interest Research Group*, at p. 1247.) By a parity of reasoning, California Code of Regulations, title 22, section 12903 requires only the "approximate time period." Respondents do not require additional information to cure the violation.

### 4. Attachment of Information Prepared by Lead Agency

Finally, the last relevant general requirement is contained in California Code of Regulations, title 22, section 12903, subdivision (b)(1), which provides: "Each notice shall include as an attachment a copy of 'The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary' . . . . This attachment need not be included in the copies of notices sent to public enforcement agencies." Shilo Management Corporation points out that the notice served on it did not include a copy of "The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary." CAG was required to serve that attachment along with the notice. (§ 12903, subd. (b)(1).) Its failure to follow this requirement renders the notice served

on Shilo Management Corporation invalid because the notice fails to satisfy a mandatory prerequisite to a citizen lawsuit.

## IV. *Third Set of Notices on Hotels*

As we explain, CAG's third set of notices, alleging occupational and environmental exposures, rectify the problems in its second set of notices and are valid.

### A. *Environmental Exposures*

With respect to environmental exposures, CAG alleged that the violators are exposing the public to tobacco smoke without the required warning. The following people are exposed: "customers, room guests, and visitors" in "areas, and rooms designated for smoking; in the lobbies, hallways, and indoor/outdoor corridors that are adjacent or nearby or on the floors where rooms or areas designated for smoking . . . where smoking has been permitted by the violators[] are geographically located at the location of the source of the exposure on the attached Exhibit A. The persons exposed to the said chemicals at the said location(s) include, but are not limited to, the reasonably foreseeable persons corresponding to the following type of persons exposed at common characteristics of facilities or sources of exposure: [¶] Certain persons entering guest rooms designated for smoking and/or areas designated for smoking, where smoking has been or is occurring by smokers: [¶] . . . [¶] Certain persons entering or passing through lobbies, hallway, and corridors, where such areas are affected by smoke that permeates, migrates, and travels from nearby or adjacent areas and rooms designated for smoking . . . ." (Boldface and italics omitted.) CAG stated that the route of exposure was through inhalation.

The notice adequately complies with California Code of Regulations, title 22, section 12903, subdivision (b)(2)(F). It identifies the location of the source of exposure by providing a reasonably clear list of the locations in the hotels where exposure allegedly occurred. In the notice, CAG sufficiently describes the route of exposure as follows: "The route of exposure for Occupational Exposures to the chemicals listed below, by the exposed employees described above, have been and are from tobacco smoke (in the smoke designated areas/rooms and affected areas as describe[d]-above) through inhalation, meaning that tobacco smoke has been and is being breathed in via the ambient air by the exposed persons causing inhalation contact with their mouths, throats, bronchi, esophagi, and lungs." (Boldface and italics omitted.)

B. *Occupational Exposures*

With respect to occupational exposures, CAG alleged: For a four-year period in locations specified in exhibit A "the violators have been and are knowingly and intentionally exposing certain employees of the violators . . . to tobacco smoke and its constituent chemicals as listed below and designated by the State of California to cause cancer and reproductive toxicity . . . without first giving clear and reasonable warning of that fact to the exposed employee (Health & Safety Code Section 25249.6). [¶] The source of exposure includes tobacco smoke and its constituent chemicals as listed below at the location of the source of the exposure on the attached Exhibit A. [T]he exposure . . . took place in the following areas: in areas and rooms designated for smoking; in the lobbies, hallways, and indoor/outdoor corridors that are adjacent or nearby or on the floors where rooms or areas designated for smoking . . . are geographically located at the location of the source of the exposure on the attached Exhibit A." (Boldface and italics omitted.) The employees include those "who have to enter rooms designated for smoking such as cleaning personnel, bell boys, room service, [*sic*] personnel, repair/maintenance personnel and any employees, regardless of the employees' occupation and job task . . . who have been and are entering or passing through other areas/rooms designated for smoking including, but not limited to, outdoor entrances, outdoor corridors, other areas, where smoking is permitted by the violators, and where smoking has been and is occurring." (Italics omitted.)

CAG also included the following employees: "reasonably foreseeable employees . . . who pass through or enter lobbies, hallways, and corridors (that are nearby or adjacent to or on the floor where areas or rooms designated for smoking are located), and where such areas are affected by the tobacco smoke (that originates from rooms and areas designated for smoking) which permeates, migrates, and travels through the openings of doors and windows and through other structural openings of the areas/rooms designated for smoking into the said lobbies, hallways, and corridors." (Boldface and italics omitted.) CAG stated that the route of exposure was through inhalation.

Respondents argue that the third set of notices "provide no notice at all about occupational exposures because they contain no facts about specific violations related to specific employees and specific hotels (such as would certainly be revealed in an investigation by CAG of the facts underlying the notice)." Respondents argue that the "third wave of notices specifically refers to a smaller list of exposed employees than the second wave of notices . . . the limited categories of employees specifically identified is eviscerated by a much more generic listing of 'any employee, regardless of occupation, who

pass through or enter lobbies, hallways and corridors that are located nearby or adjacent to or on the floor where areas or rooms designated for smoking are located.' "

While the broad language identified by respondents is not useful, it does not undermine the valid portions of CAG's notice as respondents argue. This notice complies with the requirement of California Code of Regulations, title 22, section 12903, subdivision (b)(2)(E). It adequately states the general geographic location and the description of the occupation performed by the exposed persons. In this notice, CAG sufficiently describes the route of exposure in the same manner as it described the route of exposure for environmental exposures.

## V. *Notice on Retail Stores and Gas Stations*

Most of the notices served on the retail establishments include only a consumer product exposure. However, a few notices also include environmental and occupational exposures. Respondents argue that "[r]ather than providing sufficient specificity about the nature of the exposures alleged at the 618 locations, the notice simply parroted the statutory language and, like the notices to Hotel Defendants, set forth broad categories of potential exposures without any detail."

### A. *Consumer Product Exposure*

The notice served on Atlantic Richfield Corp. (ARCO) and related entities provides, under the heading consumer product exposure: over a four-year period "the violators have been and are knowingly and intentionally selling cigars and smokeless tobacco at the locations set forth in Exhibit A and exposing consumers and the public to tobacco smoke and other chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to such persons . . . . The sources of exposures are cigars and smokeless tobacco. . . . The sale, purchase, consumption and the reasonably foreseeable use of cigars and smokeless tobacco result in exposures through inhalation, absorption, ingestion, and dermal contact to the chemicals listed below. Purchasers of the violators' cigars lit them, smoked them, and inhaled the chemicals listed below while the purchasers of violator's smokeless tobacco chewed them and absorbed the juices through the linings inside their mouths and stomachs."

The notice of consumer product exposure is sufficient to state a violation based on both cigars and smokeless tobacco. It sufficiently identifies the routes of exposure as inhalation for cigars and absorption in the mouth and stomach for smokeless tobacco. It also sufficiently identifies the consumer

products as cigars and smokeless tobacco. And, although it does not distinguish the chemicals in cigars and smokeless tobacco, it identifies the chemicals alleged in the violations. California Code of Regulations, title 22, section 12903 does not require any more.

Not all of the notices CAG served on the retail defendants cover both cigars and smokeless tobacco. For example, the notice served on Circle K Stores, Inc., covers only cigars. In the notice served on Rite Aid and related entities, CAG attempts to assert a violation based on the sale of both cigars and smokeless tobacco. However, the only exposure specified is to "tobacco smoke" rendering the allegations with respect to smokeless tobacco unintelligible. To provide sufficient notice, CAG must allege the specific product, the exposure, and the route of exposure, in a manner that makes the violation clear and understandable.

B. *Environmental Exposures*

In the notice served on Sam's Club, CAG alleges the following environmental exposures: "While in the course of doing business, at: [¶] The locations in the attached Exhibit A [¶] from 5/27/95 through 5/27/99, the violators have been and are knowingly and intentionally exposing their customers and the public to tobacco and tobacco smoke and other chemicals listed below and designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to the exposed persons (Health & Safety Code Section 25249.6). The locations of the exposures are where any third party is exposed to tobacco smoke arising from cigars and pipe tobacco sold by the violators. [¶] The route of exposure for Consumer Product Exposures and Environmental Exposures to the chemicals listed below has been inhalation, ingestion and dermal contact. . . ." (Boldface and italics omitted.)

The statements are insufficient to comply with the requirements of California Code of Regulations, title 22, section 12903, subdivision (b)(2)(F). Stating that the "locations of the exposures are where any third party is exposed to tobacco smoke arising from cigars and pipe tobacco sold by the violators" potentially covers every conceivable location traveled to by the tobacco purchaser and therefore fails to provide meaningful notice. In addition, for the same reasons discussed above, CAG fails to specify the route of exposure as required by section 12903, subdivision (b)(2)(C). The notice also fails to adequately identify the location of the source of the exposure as required by section 12903, subdivision (b)(2)(F). If CAG alleges exposure on the property of the alleged violators, it must "identify . . . the location of the source of the exposure." If it intends to provide notice for exposure beyond the property owned or controlled by the alleged violators, section 12903 requires such a statement.

### C. Occupational Exposures

Notice served on Overstreets/Wine Merchant includes the following occupational exposure: "While in the course of doing business, from 6/7/95 through 6/7/99, the violators have been and are knowingly and intentionally exposing employees of the violators to tobacco and tobacco smoke and other chemicals listed below and designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to the exposed persons. (Health & Safety Code Section 25249.6). Employees include but are not limited to bartenders, cashiers, maids, waiters, security personnel, maintenance workers, service personnel, and entertainment providers. Such exposure took place in the lobbies, smoking rooms, and guest rooms designated for smoking at: [¶] 9701 Santa Monica Blvd., Beverly Hills, CA 90210." (Boldface omitted.) CAG described the route of exposure as through "inhalation, absorption, ingestion and dermal contact."

The allegations are insufficient because, for the reasons discussed above, they fail to adequately describe the route of exposure. Because the allegations leave the specific route of exposure to speculation, they do not provide the Overstreets/Wine Merchant a meaningful opportunity to cure or the public prosecutor a meaningful opportunity to investigate.

## VI. Severability of Entities Located in San Jose

The self-named "San Jose Defendants,"[7] include hotels and retail establishments that conduct business in both San Jose *and* other locations in the state. They argue that CAG may not proceed against them because notice was not given to the San Jose City Attorney as required by section 25249.7, subdivision (d)(1). According to them, "[s]ince CAG chose to propound and serve only one sixty-day notice . . . and since that Notice was jurisdictionally defective as a result of CAG's failure to serve the San Jose City Attorney, CAG has no legal capacity to proceed with its Proposition 65 suit against the San Jose Defendants." CAG does not dispute that notice should have been served on the San Jose City Attorney. CAG, however, argues that this mistake renders invalid only the parts of the notice pertaining to business located in

---

[7] These include 7-Eleven, Inc., Walmart Stores, Inc., Sam's Club, Circle K Stores, Inc., Tosco Corp., Rite Aid Corp., Atlantic Richfield Co., Texaco Refining & Marketing, Inc., Cigarettes Cheaper, Crossroads Hospitality, Wyndham International Inc., and Patriot American Hospitality Inc.

San Jose, not the part of the notice pertaining to businesses located in cities where the city attorney was provided notice.[8]

The San Jose Defendants rely primarily on *Hallstrom v. Tillamook County* (1989) 493 U.S. 20 [107 L.Ed.2d 237, 110 S.Ct. 304] (*Hallstrom*), and its progeny for the argument that the failure to serve notice requires a complete dismissal. The issue in *Hallstrom* was "whether compliance with the 60-day notice provision [in the Resource Conservation and Recovery Act] is a mandatory precondition to suit or can be disregarded by the district court at its discretion." (*Id.* at p. 23.) The Supreme Court concluded that notice was a mandatory precondition to suit. *Hallstrom* made clear the notice requirements of the Resource Conservation and Recovery Act of 1976 (42 U.S.C. § 6901 et seq.) should be interpreted literally and cannot be modified by the court. (493 U.S. at p. 27.) However, *Hallstrom* involved the failure to serve the only relevant agency and is distinguishable from this case where, except for the San Jose City Attorney, CAG served all of the relevant public prosecutors.

Applying *Hallstrom*, the Ninth Circuit held that notice under the Clean Water Act was insufficient where it failed to name the only two plaintiffs pursuing the litigation. (*Washington Trout v. McCain Foods, Inc.* (9th Cir. 1995) 45 F.3d 1351 (*Washington Trout*).) Because the two plaintiffs were not named, the defendants "were not in a position to negotiate with the plaintiffs or seek an administrative remedy. This made any sort of resolution between the parties during the notice period an impossibility." (*Id.* at p. 1354.) Unlike in *Washington Trout*, here the accused could negotiate with CAG, and, if relevant, could negotiate with the Attorney General and other public prosecutors, even though some of the locations were in San Jose and the San Jose City Attorney did not receive service.

The cases relied upon by the San Jose Defendants require that entities located in San Jose must be dismissed because the San Jose City Attorney did not receive notice. However, those cases do not elucidate whether the other entities named in the same notice also must be dismissed.

It is consistent with both the purpose of notice and the language of the statute to allow CAG to proceed against entities not located in San Jose. Under former section 25249.7, subdivision (d), CAG was required to give notice to "the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur . . . ." CAG's failure to serve the San Jose City Attorney therefore affects entities in that jurisdiction where the violation is alleged to have occurred and the public prosecutor was

---

[8] San Jose Defendants correctly point out that belated service of the San Jose City Attorney will not cure the defect. (*DiPirro v. American Isuzu Motors, Inc., supra,* 119 Cal.App.4th at p. 973.) CAG does not argue otherwise.

not properly noticed. It does not affect entities in other cities where the public prosecutor was properly noticed. Although CAG chose not to do so, it could have noticed defendants in each city separately without violating notice requirements. Given this fact, it does not prejudice the San Jose Defendants to separate entities located in San Jose from those located elsewhere and to allow CAG to proceed only against those in the cities where the public prosecutor received adequate notice.

## VII. *Investigation*

While CAG's generic notice does not automatically demonstrate a failure to investigate, the adequacy of CAG's investigation was raised by the following respondents: Dawn Dee Motel & Apartments (sued as Comfort Inn Santa Monica), E-Z 8 Motels, Inc., Dazzio Corp. (sued as King's Inn Hotel), and Vasona Management Inc. (sued as Pacific Inns). The trial court awarded these respondents sanctions under Code of Civil Procedure section 128.7, finding that CAG failed "to offer any factual basis for the claims." "Plaintiff offered no evidence of any investigation or documentation supporting claims asserted in the 60-Day Notices or in the Complaints." Thus, as this case demonstrates, mechanisms other than invalidating a plaintiff's notice are available for addressing lawsuits brought without proper investigation.

The propriety of the sanctions awarded is not before this court as CAG did not appeal from that order. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 [25 Cal.Rptr.2d 109, 863 P.2d 179] [postjudgment order is appealable where issue in order is different from issue in judgment and is not preliminary to a later judgment].) Therefore, with respect to these respondents the trial court properly dismissed the complaint, which lacked any factual basis. However, the claim that the sanctions award collaterally estops any further litigation goes too far.

Collateral estoppel applies if five elements are satisfied: " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745], quoting *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) Although the sanctions order is final and on the merits with respect to the adequacy of CAG's investigation, it does not concern the validity of CAG's notice or the alleged violations of Proposition 65. CAG is not collaterally estopped from serving valid notice and then litigating the merits of its Proposition 65 claims.

The finding that CAG is not collaterally estopped from litigating the same claims it previously attempted to litigate raises the issue of CAG's repeated attempts to serve notice on the same respondents, a concern to many respondents and a basis for the argument that CAG's continued prosecution of its claims constitutes an abuse of the judicial process. In its Final Statement, the Office of Environmental Health Hazard Assessment recognized that the current statute allowed for "piecemeal litigation, as a private person identifies different categories of products in violation of the law, and provides successive sixty-day notices." (Off. of Environ. Health Hazard Assessment, Final Statement, *supra*, at p. 4.) It found that "[t]his, however, is a necessary consequence of the letter and purpose of the citizen suit provision . . . ." (*Ibid.*) Respondents cite and we find no rule prohibiting the successive service of notice, as occurred in this case. Therefore, we may do nothing more than acknowledge respondents' unambiguous frustration.[9]

## VIII. *Statute of Limitations*

■ Good Nite Inn argues that the case against it must be dismissed because, regardless of whether a one-year or four-year statute of limitations is applicable, the complaint was filed more than four years "after the first violation occurred." The argument is inaccurate for two reasons. First, CAG seeks prospective injunctive relief. In this context, the case is analogous to one in which a plaintiff seeks to enjoin a continuing nuisance. Like a continuing nuisance, the continued failure to provide a reasonable warning (assuming for the moment that CAG's allegations are true), can be abated at any time or can continue indefinitely. Even if the applicable statute of limitations had expired, CAG may still obtain an injunction. (*Phillips v. City of Pasadena* (1945) 27 Cal.2d 104, 107–108 [162 P.2d 625].) Second, each knowing and intentional exposure of "any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . ." is a violation of section 25249.6. Thus, it is incorrect to measure time from when "the first violation occurred" as Good Nite Inn does. Instead, for statute of limitations purposes, it should be measured from the time of the last alleged violation.

## IX. *Notices Absent from the Record*

CAG failed to include the notices served on all of the respondents in the record. CAG acknowledges that the notices served on Airport South Hotel, LLC, Premium Cigars International, Ltd., and Cigarettes Cheaper are not in the record and we are unable to locate notice served on Ramada Maingate-Saga Inn. Similarly, because the notice served on Extended Stay

---

[9] We decline to consider CAG's motivation for bringing these lawsuits, as that issue is not before us.

America and Studio Plus Properties contains only the first page, we cannot adequately review it. With respect to those notices not included in the record, CAG fails to show the trial court erred in finding them invalid. It is the burden of the party challenging the court's determination to affirmatively demonstrate error. (*Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260 [24 Cal.Rptr.3d 895].)

### X. CAG's Section 17200 Claims

"After Proposition 64, which the voters approved at the November 2, 2004, General Election, a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.' [Citations.]" (*Californians for Disability Rights v. Mervyn's, LLC, supra,* 39 Cal.4th at p. 227.) This revised standing requirement applies to cases filed before the passage of Proposition 64. (*Californians for Disability Rights,* at p. 227; *Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th at p. 241.) CAG did not allege that it suffered injury in fact or lost money as a result of the alleged violation of Business and Professions Code section 17200. Therefore it does not have standing to pursue its section 17200 claims. If upon remand CAG files a motion for leave to amend to substitute a different plaintiff "the superior court should decide the motion by applying the established rules governing leave to amend (Code Civ. Proc., § 473) and the relation back of amended complaints [citation]." (*Branick v. Downey Savings & Loan Assn., supra,* 39 Cal.4th at p. 239.)

### XI. Conclusion*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### FACTUAL AND PROCEDURAL BACKGROUND II (CDG APPEAL)*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISCUSSION II (CDG APPEAL)*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 953.

## DISPOSITION

*The judgment entered in favor of Interstate Hotels, LLC, and Crossroads Hospitality, LLC, is reversed. The remaining judgments are affirmed in part and reversed in part. Each party to this appeal to bear its own costs on appeal.

Boland, J., and Johnson, J.,† concurred.

---

*See footnote, *ante*, page 953.

†Associate Justice of the Court of Appeal, Second Appellate District, Division Seven, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.