[No. B132719. Second Dist., Div. Four. Apr. 25, 2001.]

REUBEN YEROUSHALMI, Plaintiff and Appellant, v.
MIRAMAR SHERATON et al., Defendants and Respondents.

[No. B132723. Second Dist., Div. Four. Apr. 25, 2001.]

REUBEN YEROUSHALMI, Plaintiff and Appellant, v.
THE WESTIN BONAVENTURE et al., Defendants and Respondents.

[No. B134924. Second Dist., Div. Four. Apr. 25, 2001.]

CONSUMER CAUSE, INC., Plaintiff and Appellant, v.
ARCO OIL & GAS COMPANY et al., Defendants and Respondents.

En la parte superior derecha: 739

**COUNSEL**

Mehrban & Ghalchi, Kamran Ghalchi and Morse Mehrban for Plaintiffs and Appellants.

Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Michael J. Stiles and Kurt Weissmuller for Defendants and Respondents Arco Oil & Gas Company et al.

Stanzler, Funderburk & Castellon, Jordan S. Stanzler, Ruben A. Castellon, Lisa J. Morelli, Ross H. Hirsch and William W. Funderburk, Jr., for Defendants and Respondents Miramar Sheraton et al., and The Westin Bonaventure et al.

**OPINION**

**HASTINGS, J.**—Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.), provides for citizen enforcement if applicable government agencies fail to undertake enforcement after service of an appropriate notice of violation. Here, appellants sent notices relating to alleged violations by various commercial establishments throughout the state and then filed suit after the applicable governmental agencies failed to take steps to enforce the alleged violations. We conclude that the notices sent were insufficient because they failed to state sufficient specific facts to enable the alleged violators and the appropriate governmental agencies to undertake a meaningful investigation and remedy the alleged violations prior to citizen intervention. Thus, the trial court did not err in sustaining demurrers without leave to amend and dismissing the actions.

## Background

We have consolidated three appeals: Nos. B132723, *Yeroushalmi v. Westin Bonaventure* (Super. Ct. L.A. County, No. BC200353) (*Westin*); B134924, *Consumer Cause, Inc. v. Arco Oil & Gas Co.* (Super. Ct. L.A. County, No. BC196094) (*Arco*); and B132719, *Yeroushalmi v. Miramar Sheraton* (Super. Ct. L.A. County, No. BC200421) (*Miramar*). They are appeals from judgments in three of twenty or so related actions, all of which involve the same issue, the adequacy of the 60-day notice required by Health and Safety Code section 25249.7, subdivision (d), to be given prior to filing an action under Proposition 65.[1]

In *Westin*, the trial court sustained respondents' demurrer without leave to amend, and dismissed the action on April 13, 1999. A notice of appeal from that order was filed on June 3, 1999. In *Arco*, the trial court granted a motion for judgment on the pleadings without leave to amend, as well as a motion for summary judgment, and dismissed the action on August 3, 1999. A notice of appeal from the order of dismissal was filed on August 27, 1999.[2] In *Miramar*, a demurrer was sustained without leave to amend, and the action was dismissed on April 27, 1999. A notice of appeal from that order was filed on June 3, 1999.

Appellants attached to each complaint a copy of the 60-day notice sent to each of respondents. The *Westin* and *Miramar* complaints reproduced in the record on appeal include those exhibits. However, the only complaint we have found in the *Arco* matter is an exhibit to respondents' motion for summary judgment. It is a first amended complaint, filed September 30, 1998, and recites that 60-day notices are attached as exhibits. The exhibits are not attached. However, the motion for summary judgment included a copy of the notice sent to Arco Oil & Gas Company and a few of the defendants in related matters.

*The Westin Notice*

The *Westin* 60-day notice is dated August 19, 1998, and is entitled, "*60-day Notice for Failure to Warn Public About Chemicals listed Under*

[1]We shall sometimes refer to the appellants collectively for convenience, although they do not appear together in all three appeals. The issues are identical, their briefs are identical, and they are represented by the same attorneys. Thus, we shall distinguish one from the other only when necessary to avoid confusion.

[2]The trial court apparently permitted defendants in related actions to file a joint demurrer with Arco. Since there is no order in the record consolidating the related actions, and no separate judgments or notices of appeal, the other actions are not before us, and we do not consider any of appellants' contentions in relation to them. (Cf. *Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 701-702 [38 Cal.Rptr.2d 413].)

*Health & Safety Code Section 25249.6.*" Following the name and address of appellants, the notice states, in relevant part: "This letter constitutes notification that [the *Westin* respondents] have violated Proposition 65, the Safe Drinking Water and Toxic Enforcement Act (commencing with Health & Safety Code Section 25249.5)."

Under the title, "*Consumer Product Exposures,*" the notice continues: "While in the course of doing business, since ***08/19/94*** and to this date, the violators have been and are knowingly and intentionally exposing consumers and the public to tobacco smoke and cigars which contain, and the consumption of which exposes said persons to, chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to such persons [citation]." (Boldface and italics in original.)

Under the title, "*Occupational Exposures,*" the notice states: "While in the course of doing business, since ***08/19/94*** and to this date, the violators have been and are knowingly and intentionally exposing employees of the violators, in ***Los Angeles, Costa Mesa, Long Beach, Millbrae, Santa Clara, San Francisco, Santa Barbara, California,*** to tobacco smoke and cigars which contains [*sic*] chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to such persons (Health & Safety Code Section 25249.6). Employees include and are not limited to bartenders, cashiers, waiters, waitresses, cooks, security personnel, maintenance workers and entertainment providers." (Boldface and italics in original.)

Under "*Environmental Exposures,*" the notice states: "While in the course of doing business, since ***8/19/94*** and to this date, the violators have been and are knowingly and intentionally exposing the public to certain chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and reasonable warning of that fact to the exposed persons (Health & Safety Code Section 25249.6). The source of exposure is tobacco smoke and cigars. These exposures occurred on and beyond property owned and controlled by the violators." (Boldface and italics in original.)

The notice concludes: "The route of exposure to these chemicals has been inhalation, ingestion, and dermal contact. The violators exposed and are exposing the above-referenced persons to the following chemicals: [list]." The list consists of tobacco smoke and 49 chemicals, including benzene, carbon monoxide, DDT, nicotine, styrene, toluene, urethane, vinyl chloride, arsenic, cadmium, chromium, lead, and nickel.

Attached to the notice is a summary of Proposition 65 requirements, and a certificate of service, showing service on the California Attorney General, the City Attorneys of Los Angeles and San Francisco, the District Attorneys of Los Angeles County, Orange County, San Diego County, San Francisco County, and Santa Clara County; as well as the *Westin* respondents, each at the same address in Seattle, Washington.

*The Miramar Notice*

The *Miramar* notice is identical to the *Westin* notice, except the date of violations, the names of the violators, and the locations of the violations. Tobacco smoke and the same 49 chemicals are listed as those to which persons were exposed. The date of violation is stated to have been "***08/18/94*** and to this date." (Boldface and italics in original.) The notice is dated August 18, 1998. Like the *Westin* notice, no location is given for the "*Consumer Product Exposures*," and the "*Environmental Exposures*" are said to have "occurred on and beyond property owned and controlled by the violators." The locations of the occupational exposures are stated to have been Los Angeles, Newport Beach, Santa Barbara, Palo Alto, San Diego, Rosemead, Anaheim, Pomona, San Francisco, Concord, City of Industry, San Jose, Milpitas, Universal City, Santa Monica, Sacramento, Ranch Cordova, San Pedro, La Jolla, Ventura, Bakersfield, Emeryville, Fullerton, Sunnyvale, San Jose, Fresno, and Pleasanton.

Also attached to the *Miramar* notice is a summary of Proposition 65 requirements, and a certificate of service, showing service on the California Attorney General, the City Attorneys of Los Angeles and San Francisco, the District Attorneys of Alameda County, Contra Costa County, Fresno County, Kern County, Los Angeles County, Orange County, Riverside County, Sacramento County, San Diego County, San Francisco County, San Luis Obispo County, San Mateo County, Santa Clara County, and Ventura County; as well as the *Miramar* respondents, each at the same address in Boston, Massachusetts.

*The Arco Notice*

The *Arco* notice is a much abbreviated version of the *Westin* and *Miramar* notices. It contains no "*Occupational Exposures*" section, or "*Environmental Exposures*" section, only a "*Consumer Product Exposures*" section, which states: "While in the course of doing business, since *01/18/91* and to this date, the violators have been and are knowingly and intentionally exposing consumers and the public to cigars which contain, and the consumption of which exposes said persons to, chemicals designated by the State of California to cause cancer and reproductive toxicity without first giving clear and

reasonable warning of that fact to such persons. . . ." The notice is dated June 24, 1998. The same 49 chemicals and tobacco are listed as having been exposed to consumers and the public. No location is given for any violation. A summary of Proposition 65 requirements is attached, as well as a certificate of service, showing service on the California Attorney General, the City Attorney of Los Angeles, the Los Angeles County District Attorney, Arco Oil and Gas Company in Wilmington, Delaware, and Arco AM/PM in Los Angeles.

## Discussion

The adequacy of appellants' 60-day notices is the only issue on appeal, and one of first impression. Since it involves solely an issue of statutory interpretation, our review in each case is de novo. (See *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].)

Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986, was passed by California voters in 1986, resulting in the enactment of Health and Safety Code section 25249.5 et seq., including section 25249.6, which provides: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual, except as provided in Section 25249.10."[3]

In addition to enforcement by the Attorney General, district attorneys, and city attorneys, Proposition 65 provides for citizen enforcement, so long as the citizen enforcer has given the named public attorneys and the alleged violator a 60-day notice, and no public attorney has diligently prosecuted an action. (Health & Saf. Code, § 25249.7, subd. (d).)[4]

The language of the statute requires "notice of the violation," but does not define the term or explain what would be adequate notice, and neither the

[3]Under section 25249.10, no notice is required for the following: "(a) An exposure for which federal law governs warning in a manner that preempts state authority. [¶] (b) An exposure that takes place less than twelve months subsequent to the listing of the chemical in question . . . . [¶] (c) An exposure for which the person responsible can show that the exposure poses no significant risk . . . ."

[4]When these actions were filed, section 25249.7, subdivision (d) read: "Actions pursuant to this section may be brought by any person in the public interest if (1) the action is commenced more than sixty days after the person has given notice of the violation which is the subject of the action to the Attorney General and the district attorney and any city attorney in whose jurisdiction the violation is alleged to occur and to the alleged violator, and (2) neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against such violation." (Added by Prop. 65, Gen. Elec. (Nov. 4, 1986).) As amended in 1999, the subdivision now reads: "Actions

parties nor we have found any published opinion construing or declaring the required contents of a 60-day notice. However, requirements as to the contents of the 60-day notice are set forth in California Code of Regulations, title 22, section 12903, and administrative regulations are generally accorded great weight in construing initiative measures. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281].) Section 12903, subdivision (a) defines the 60-day notice as "a notice meeting all requirements of this section." The notice must contain a reasonably clear description of the violation, and among other things, the "notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation, . . . expressed in terms of common usage and understanding, on each of the indicated topics." (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2).) Those topics vary with the three types of exposure alleged here (consumer, occupational, and environmental), but all notices of violation of Health and Safety Code section 25249.6 must include the approximate time period during which the violation is alleged to have occurred, and the route of exposure, such as by inhalation, ingestion, or dermal contact. (Cal. Code Regs., tit. 22, § 12903, subd. (b).)

For notices involving consumer product exposures, the notice must include the name or the specific type of consumer product or services that cause the violation, "with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products or services from others sold or offered by the alleged violator for which no violation is alleged." (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2)(D).)

Notices involving occupational exposures must include the general geographic location of the exposure to employees, or if many locations, a description of the occupation or type of task performed by the exposed persons. (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2)(E)1.) "[W]here the alleged violator is the manufacturer or distributor of the chemical or product causing the exposure, the notice shall identify products in the same manner as set forth for consumer product exposures in subsection (b)(2)(D), above." (*Id.*, § 12903, subd. (b)(2)(E)2.)

pursuant to this section may be brought by any person in the public interest if both of the following requirements are met: [¶] (1) The private action is commenced more than 60 days from the date that the person has given notice of an alleged violation of Section 25249.5 or 25249.6 which is the subject of the private action to the Attorney General and the district attorney, and any city attorney or prosecutor in whose jurisdiction the violation is alleged to have occurred, and to the alleged violator. [¶] (2) Neither the Attorney General nor any district attorney nor any city attorney or prosecutor has commenced and is diligently prosecuting an action against the violation."

Notices involving environmental exposures must identify the location of the source of the exposure, or where numerous sources of the exposure are alleged, a description of the common characteristics that result in the exposure, "in a manner sufficient to distinguish those facilities or sources from others for which no violation is alleged." (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2)(F).) The notice must also state whether the environmental exposure is occurring beyond the property owned or controlled by the alleged violators. (*Ibid.*)

The regulation provides that the notice need *not* include the specific retail outlet or time or date at which any product was purchased; the level of exposure to the specified chemical; specific admissible evidence to prove the violation; the UPC (universal product code), SKU (stock keeping unit), model, design, or stock number, or other more specific identification of products; or the lot, block, or other legal description of the property of geographic areas described in the notice. (Cal. Code. Regs., tit. 22, § 12903, subd. (b)(4).)

Appellants contend that they have substantially complied with the regulation. We turn first to the question of the compliance of the *Arco* notice, since it is substantially different from the other two. The *Arco* notice alleges only a consumer product exposure, consisting of having exposed consumers and the public to cigars between January 18, 1991, and June 24, 1998, by means of inhalation, ingestion, and dermal contact.[5] Thus, in addition to a reasonably clear description of the violation, and sufficient information to allow an assessment of the nature of the alleged violation, appellants were required to identify the product resulting in exposure. (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2).)

While the notice names the specific type of consumer product—cigar, it fails to provide adequate, or indeed, *any* information to assess the nature of the alleged violation. (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2).) The notice is inadequate by any measure, because it fails to state, in even the simplest terms, just what the violation was. "A 'consumer products exposure' is an exposure which results from a person's acquisition, purchase, storage, consumption, or other reasonably foreseeable use of a consumer

[5]Appellants assert that the notice alleged all three types of exposure, and refers to notices sent to defendants other than the *Arco* defendants, attached as exhibits to complaints in related actions, which were included as exhibits to the joint demurrer and motion for judgment on the pleadings. The only actions before us are superior court case Nos. BC200353 (*Westin*), BC196094 (*Arco*), and BC200421 (*Miramar*). Appellants have not placed the judgments or the notices in the other related actions before us. (See fn. 2, *ante*.) Thus, with regard to the action against the *Arco* defendants, we review only the notice sent to them, as alleged in their motion for summary judgment.

good, or any exposure that results from receiving a consumer service." (Cal. Code Regs., tit. 22, § 12601, subd. (b).) There is no allegation in the notice of any of the enumerated activities. Appellants argue that the result of the exposure is adequately alleged by stating that Arco exposed consumers to tobacco smoke. However, regardless of whether this additional fact would make the notice adequate, it is not, contrary to appellants' contention, alleged in the notice. Appellants also argue that the notice states that Arco sold cigars. We find no such statement in the notices.

The *Westin* and *Miramar* notices describe the consumer exposure as exposure to "tobacco smoke and cigars." Appellants contend that the phrase is a reasonably clear description of the alleged violation, and provides adequate information from which to allow the recipient to assess the nature of the violation. (See Cal. Code Regs., tit. 22, § 12903, subd. (b)(2).) We disagree.

Like the *Arco* notice, the *Westin* and *Miramar* notices do not even give enough information to discern just what the violation was. The notice names the harmful substances, and alleges exposure through "inhalation, ingestion, and dermal contact," in nearly the exact words of the regulation. (Cal. Code Regs., tit. 22, § 12601, subd. (d).) Thus, the notices *suggest* that the violation consisted of contact, but state no facts describing how the contact occurred, and neither the dates of exposure (a period of years) or the description of persons exposed (every general class of employee respondents might have) provide any clarification.[6]

Appellants contend that because the statute must be given a broad interpretation, to further its basic remedial objectives (see *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 314 [58 Cal.Rptr.2d 855, 926 P.2d 1042]), their broad general notices should be deemed sufficient. Respondents, on the other hand, contend that we should examine not just the remedial objectives, but also the objectives of the provision for citizen enforcement, including the limits placed upon citizen enforcement by the 60-day notice requirement.

We interpret initiative measures using the ordinary rules and canons of statutory construction. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d

[6]The notices also allege occupational and environmental exposures. "An 'environmental exposure' is an exposure which may foreseeably occur as the result of contact with an environmental medium, including, but not limited to, ambient air, indoor air, drinking water, standing water, running water, soil, vegetation, or manmade or natural substances, either through inhalation, ingestion, skin contact or otherwise. Environmental exposures include all exposures which are not consumer products exposures, or occupational exposures." (Cal. Code Regs., tit. 22, § 12601, subd. (d).) "An 'occupational exposure' is an exposure, in the workplace of the employer causing the exposure, to any employee." (*Id.*, § 12601, subd. (c).)

1188, 1212 [246 Cal.Rptr. 629, 753 P.2d 585].) Thus, "our primary purpose is to ascertain and effectuate the intent of the voters who passed the initiative measure. [Citations.]" (*In re Littlefield* (1993) 5 Cal.4th 122, 130 [19 Cal.Rptr.2d 248, 851 P.2d 42].) We look first to the language of the statute, giving the words their ordinary meaning, and construing the statutory language in the context of the statute as a whole and the overall statutory scheme. (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].)[7]

Section 1, subdivision (c) of the initiative measure gives some indication as to why it includes a provision for citizen enforcement: "To secure strict enforcement of the laws controlling hazardous chemicals and deter actions that threaten public health and safety." (See Historical and Statutory Notes, 40C West's Ann. Health & Saf. Code (1999 ed.) foll. § 25249.5, p. 279.) However, citizen enforcement was conditioned upon the failure of state and local government agencies to commence or diligently prosecute an action, after due notice. (See Historical and Statutory Notes, 40C West's Ann. Health & Saf. Code (1999 ed.) foll. § 25249.7, subd. (d), p. 284.)[8] It follows then, that the purpose of the notice is to enable those agencies to investigate and, if necessary, to institute a lawsuit against the polluter.

Since there is an absence of California authority regarding the contents of the 60-day notice, respondents contend that those objectives may be discerned through a comparison with federal cases construing identical provisions in the Resource Conservation and Recovery Act (42 U.S.C. § 6972), the Clean Water Act (33 U.S.C. § 1365), and other federal environmental statutes. (E.g., *Department of Energy v. Ohio* (1992) 503 U.S. 607 [112 S.Ct. 1627, 118 L.Ed.2d 255]; *Hallstrom v. Tillamook County* (1989) 493 U.S. 20 [110 S.Ct. 304, 107 L.Ed.2d 237] [wildlife]; *Hawksbill Sea Turtle v. Fed. Em. Management Agency* (3d Cir. 1997) 126 F.3d 461, 470; *Washington Trout v. McCain Foods, Inc.* (9th Cir. 1995) 45 F.3d 1351; *Public Interest Research Group v. Hercules, Inc.* (3d Cir. 1995) 50 F.3d 1239; *California Sportfishing v. City of W. Sacramento* (E.D.Cal. 1995) 905 F.Supp. 792.)

We agree that "[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the [framers] intended that the language as used in the later enactment would be given a like

[7]Although we may look " 'to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet' " (*People v. Rizo*, *supra*, 22 Cal.4th at p. 685), we have found little guidance from that source.

[8]Although section 25249.7, including subdivision (d), was amended in 1999, notice and failure of government agencies to act are still prerequisites to citizen enforcement.

interpretation. This rule is applicable to state statutes which are patterned after federal statutes. [Citations.]" (*Los Angeles Met. Transit Authority v. Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905], disapproved on another point in *County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835].) This rule is inapplicable to statutes enacted prior to judicial construction of the similar federal act. (*People v. Simon* (1995) 9 Cal.4th 493, 511 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) Most of the federal authorities upon which respondents rely were published after the enactment of Proposition 65, and are therefore not appropriate indicators of the voters' intent.

Our own research has uncovered federal authority that predates the passage of Proposition 65, construing the nearly identical notice provisions of the Clean Water Act (33 U.S.C. § 1365), by means of comparison with similar provisions of the Clean Air Act (42 U.S.C. § 7604). (E.g., *Friends of the Earth v. Consolidated Rail Corp.* (2d Cir. 1985) 768 F.2d 57; *Garcia v. Cecos Intern., Inc.* (1st Cir. 1985) 761 F.2d 76; *Natural Resources Defense Council, Inc. v. Train* (D.C. Cir. 1974) 510 F.2d 692.) These earlier authorities are a better indicator of the intent of the framers of Proposition 65. (Cf. *People v. Simon, supra,* 9 Cal.4th at p. 511.)

The citizen enforcement provisions of the Clean Air Act were intended to facilitate the role of citizens in enforcement of the act, and " 'Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests.' [Citation.]" (*Friends of the Earth v. Consolidated Rail Corp., supra,* 768 F.2d at p. 63.) At the same time, however, Congress recognized the " 'obvious danger that unlimited public actions might disrupt the implementation of the Act and overburden the courts,' " and placed explicit restrictions on citizen suits, including the 60-day notice requirement. (*Ibid.*)

In *Natural Resources Defense Council, Inc. v. Train, supra,* 510 F.2d 692, the federal court set forth a comprehensive summary of the legislative history of the citizen enforcement provisions of the Clean Air Act, and concluded that the citizen enforcement provisions were intended "to widen citizen access to the courts, as a supplemental and effective assurance that the Act would be implemented and enforced," but not to "fling the courts' door wide open." (*Id.* at p. 700.)

The appendix to the *Train* opinion includes legislative history materials, including excerpts from Senate Report No. 91-1196, which recommended

regulations requiring the citizen to include facts in the notice that would briefly describe the polluting activity and its location, in order to give the public enforcement officer an opportunity to act on the alleged violation. (*Natural Resources Defense Council, Inc. v. Train, supra*, 510 F.2d at p. 724.)

" 'The required notice was intended to trigger agency enforcement, and to afford the [agency], state, and violator sixty days to resolve the problem without being harassed by a lawsuit. By guaranteeing time for cooperation and agency enforcement, notice also ensured that some citizen suits could be avoided, thereby lessening the burden of citizen suits shouldered by the courts. . . .' " (*Garcia v. Cecos Intern., Inc., supra*, 761 F.2d at p. 82.) Thus, the purpose of the notice provision is to encourage public enforcement, thereby avoiding the need for a private lawsuit altogether, and to encourage resolution of disputes outside the courts. (See *id.* at pp. 81-82.)

It is likely that the framers of Proposition 65 were aware of the analogous federal authorities, and intended the same construction to be placed upon the provisions similar to those found in the federal Clean Air Act and Clean Water Act. We thus conclude that the framers of the initiative intended that the notice contain sufficient *facts* to facilitate and encourage the alleged polluter to comply with the law, and to encourage the public attorney charged with enforcement to undertake its duty.

California regulations reflect the same intent to further settlement and public enforcement by requiring "adequate information from which to allow the recipient to assess the nature of the alleged violation." (Cal. Code Regs., tit. 22, § 12903, subd. (b)(2).) Neither settlement nor an official investigation is likely to result from a pro forma notice that the citizen intends to sue in 60 days for any violation relating to tobacco smoke or cigars that discovery might turn up. Appellants' notices, which simply regurgitate the language of the regulation, without stating the most basic facts to describe the nature of the violation, cannot be said to provide adequate information to allow the assessment of the nature of the alleged violation.

Appellants have not cited, and we have not found, any pre-Proposition 65 judicial construction of similar citizen enforcement provisions which might lend support to appellants' conclusory, fact-bereft, boilerplate 60-day notice. A notice which merely alleges that there was tobacco smoke or a cigar somewhere on or off one or more of the alleged violator's business premises, exposing the public and all classes of employees in a given city to toxins sometime during a four-year period, gives no notice at all.

## DISPOSITION

The judgments in Los Angeles Superior Court case Nos. BC200353, BC196094, and BC200421, are affirmed. Respondents shall have their costs on appeal.

Vogel (C. S.), P. J., and Epstein, J., concurred.