Filed 2/20/26

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL HEALTH ADVOCATES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> PANCHO VILLA'S, INC., et al., <br><br> Defendants and Respondents. | D084705 <br><br><br> (Super. Ct. No. 37-2021-00034211-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Reversed and remanded with directions.

Entorno Law, Jake W. Schulte, Noam Glick, and Craig M. Nicholas for Plaintiff and Appellant.

Aguirre & Severson, Michael J. Aguirre, and Maria C. Severson for Defendant and Respondent Pancho Villa's, Inc.

INTRODUCTION

The Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.), adopted by California voters in 1986 as

Proposition 65,[1] is a remedial statute intended to protect the public from exposure to chemicals known to cause cancer or reproductive toxicity. (§ 25249.6.)  Businesses that violate Proposition 65 can be sued by the Attorney General and local prosecutors, or by private individuals acting in the public interest.  (§ 25249.7, subd. (c).)  A private individual may bring an action only after providing a notice of violation to the Attorney General, local prosecutors, and the alleged violator, and 60 days have passed without the applicable prosecuting agencies commencing an enforcement action. (§ 25249.7, subd. (d)(1)–(2).)

The 60-day notice must satisfy four general requirements: (1) identification of the noticing individual or entity, with their contact information, and the alleged violator, (2) identification of each chemical involved in the alleged violation, (3) identification of the approximate time period of the violation, and (4) attachment of a copy of " 'The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary' " (Appendix A) prepared by the Office of Environmental Health Hazard Assessment (OEHHA).  (Cal. Code Regs.,[2] tit. 27, § 25903, subd. (b).)  A person may not commence a public interest action without complying with all these requirements.  (Regs., § 25903, subd. (a).)

Environmental Health Advocates, Inc. (EHA) brought a Proposition 65 action against Pancho Villa's, Inc. (Pancho Villa's), alleging its tortilla

---

[1]    Hereinafter referred to as the Act or Proposition 65.  Further undesignated statutory references are to the Health & Safety Code.

[2]    Further references to regulations are to title 27 of the California Code of Regulations, except as otherwise specified, and will be cited as "(Regs., § 25903)," for example.

2

products exposed consumers to acrylamide, a known carcinogen. Before EHA filed suit, it provided Pancho Villa's and the Attorney General with a 60-day notice. Pancho Villa's asserts the action must be dismissed because the notice was defective in two ways. First, relying on the regulation's text that the notice is to provide the name, address, and telephone number of "a responsible individual *within the noticing entity*" (Regs., § 25903, subd. (b)(2)(A)(1), italics added), Pancho Villa's argues EHA improperly provided contact information for its retained counsel instead. Second, although EHA attached OEHHA's summary of Proposition 65, it was not the current version. Accepting these arguments, the trial court concluded EHA failed to comply with the notice requirements and granted Pancho Villa's motion for judgment on the pleadings, resulting in dismissal of the action.

The question presented in this appeal is whether a party's failure to strictly comply with a particular procedural step of the notice requirements under section 25903 of the regulations will, or will not, have the effect of invalidating a Proposition 65 action. No case has answered this specific question. We conclude section 25903 is to be given directory effect and substantial compliance is the governing test. Accordingly, we reverse the judgment on the pleadings.

## BACKGROUND

### I.

### *Overview of Proposition 65*

Proposition 65 prohibits businesses from knowingly exposing consumers to chemicals known by the state to cause cancer or reproductive toxicity without a warning (§ 25249.6), and from knowingly releasing such chemicals into sources of drinking water (§ 25249.5). The "measure was driven by the voters' desire for greater protection against hazardous

chemicals, specifically including information about exposures, strict enforcement [of the law,] and deterrence of actions threatening public health and safety." (*Lee v. Amazon.com, Inc.* (2022) 76 Cal.App.5th 200, 236.)

EHA's action alleges a violation of section 25249.6, which provides, in part: "No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual." A person who violates or threatens to violate the Act may be enjoined and liable for civil penalties of up to $2,500 per day for each violation. (§ 25249.7, subd. (a) & (b)(1).) Seventy-five percent of the penalties collected is paid to the State Treasury (§ 25249.12, subds. (b) & (c)(1)), and 25 percent to a person suing under Proposition 65 in the public interest. (§ 25249.12, subd. (d)).

A person may bring an enforcement action in the public interest if two requirements are satisfied. *First*, the action must be commenced more than 60 days from the date the person gave notice of the claimed violations to the Attorney General and the district attorney, city attorney, or prosecutor in the jurisdiction where the violation is alleged to have occurred, and to the alleged violator. (§ 25249.7, subd. (d)(1).) If, as here, the action alleges a violation of section 25249.6, the notice must also include a "certificate of merit executed by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney. The certificate of merit shall state that the person executing the certificate has consulted with one or more persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other data regarding the exposure to the listed chemical that is the subject of the action, and that, based on that information, the person executing the certificate believes there is a

4

reasonable and meritorious case for the private action. Factual information sufficient to establish the basis of the certificate of merit . . . shall be attached to the certificate of merit that is served on the Attorney General." (§ 25249.7, subd. (d)(1).) *Second*, a person may commence a public interest action only if the Attorney General or applicable local prosecutor does not bring a public enforcement action within the 60 days. (§ 25249.7, subd. (d)(2).)

The language of the Act requires "notice of an alleged violation of [s]ection 25249.5 or 25249.6 that is the subject of the private action" (§ 25249.7, subd. (d)(1)) "but does not define the term or explain what would be adequate notice" (*Yeroushalmi v. Miramar Sheraton* (2001) 88 Cal.App.4th 738, 744 (*Yeroushalmi*) [construing the Act's former language, " 'notice of the violation' "]). Because the Act itself "provides relatively little definition of the notice requirements," OEHHA[3] adopted regulations in 1996 to "specify information that should be included in 60-day notices served under the Act." (OEHHA, Final Statement of Reasons, Adopt Section 12903, Notices of Violation, Title 22, Division 2, California Code of Regulations (1997) pp. 2–3, 1 (FSOR).)[4]

---

[3]    OEHHA is the " '[l]ead agency' " designated by the Governor to implement the provisions of Proposition 65. (Regs., § 25102, subd. (o).) The scope of OEHHA's quasi-legislative authority under the Act is limited to issuing "regulations, standards, and permits as necessary to conform with and implement this chapter and to further its purposes." (§ 25249.12, subd. (a).)

[4]    EHA's and Pancho Villa's unopposed requests for judicial notice are granted in part and denied in part. On both parties' requests, we take judicial notice of OEHHA's FSOR in adopting former section 12903, now section 25903 of the regulations (EHA's Exhibit 17 and Pancho Villa's Exhibit 3). We also grant Pancho Villa's request to take judicial notice of EHA's 60-

The regulation that sets forth the required contents of the notice is section 25903, formerly section 12903.[5] It provides that, in public interest actions, " 'notice of the violation which is the subject of the action' . . . shall mean a notice meeting all requirements of this section. No person shall commence an action to enforce the provisions of the Act 'in the public interest' pursuant to [section 25249.7, subdivision (d)] of the Act except in compliance

day pre-suit notices in this case (Exhibits 1 and 2); OEHHA's "Initial Statement of Reasons, Proposition 65, Title 27, California Code of Regulations, Proposed Amendments to Section 25903, Appendix A – A Summary," published on August 8, 2014 (Exhibit 5); and OEHHA's "Appendix A, Office of Environmental Health Hazard Assessment, California Environmental Protection Agency, The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary," published May 2017 (Exhibit 7). (Capitalization omitted.)

We deny the remainder of the parties' requests for judicial notice, specifically EHA's Exhibits 1 to 16, and 18, and Pancho Villa's Exhibits 4, 6, and 8 to 19. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 688, fn. 10 [an appellate court can decline to take judicial notice of matters that are not relevant or are not dispositive].) Included in this denial are the parties' request that we judicially notice 19 superior court decisions in unrelated matters. Both parties should be aware that reliance on unpublished superior court decisions in their briefings on appeal is improper under California Rules of Court, rule 8.1115(a). (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 933, fn. 9; *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1298, fn. 5.) Unpublished superior court decisions "do not have precedential value" (*Pereira-Goodman v. Anderson* (1997) 54 Cal.App.4th 864, 872, fn. 5) and do not provide guidance to other courts and litigants (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 282).

[5] Section 12903 of the regulations was renumbered as section 25903 in 2008 without substantive changes. (Regs., § 25903, Register 2008, No. 25 (June 20, 2008) pp. 1021–1022.) We refer to the regulation by its current number, section 25903, throughout.

6

with all requirements of this section." (Regs., § 25903, subd. (a).)  The regulation specifies that the notice must include all the following:

"(1)    General Information.  Each notice shall include as an attachment a copy of 'The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary' (see Appendix A) prepared by the lead agency.  This attachment need not be included in the copies of notices sent to public enforcement agencies.  A copy of this attachment may be obtained by writing to the [OEHHA] . . . .

"(2)    Description of Violation.  A notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation, as set forth in this paragraph. The provisions of this paragraph shall not be interpreted to require more than reasonably clear information, expressed in terms of common usage and understanding, on each of the indicated topics.

"(A)  For all notices, the notice shall identify:

"(1)  the name, address, and telephone number of the noticing individual *or a responsible individual within the noticing entity* and the name of the entity;

"(2)  the name of the alleged violator or violators;

"(3)  the approximate time period during which the violation is alleged to have occurred; and

"(4)  the name of each listed chemical involved in the alleged violation[.]"

(Regs., § 25903, subd. (b)(1)–(2)(A), italics added.)

In addition to these general requirements, for alleged violations involving consumer product exposures under section 25249.6 of the Act, the notice must also state "the route of exposure by which exposure is alleged to occur (e.g., by inhalation, ingestion, dermal contact)" and "the name of the consumer product . . . or the specific type of consumer

7

product . . . that cause the violation, with sufficient specificity to inform the recipients of the nature of the items allegedly sold in violation of the law and to distinguish those products . . . from others sold or offered by the alleged violator for which no violation is alleged. The identification of a chemical . . . must be provided for each product or service identified in the notice." (Regs., § 25903, subd. (b)(2)(C) & (D).)

II.

*EHA's 60-Day Notice to Pancho Villa's*

In September 2020, EHA sent Pancho Villa's a Proposition 65 notice of violation alleging that its tortilla products exposed consumers to acrylamide. In January 2021, after the required 60 days had passed and neither the Attorney General nor local prosecutor had commenced a prosecution, EHA filed a lawsuit seeking injunctive relief and civil penalties for Pancho Villa's alleged violation of section 25249.6 of the Act.

In September 2021, EHA issued an amended notice of violation to identify the tortilla manufacturer as Area 51 MexProd, Inc. and its distributor as Tortilleria Santa Fe, Inc. After the new 60-day period had passed, EHA amended its complaint to substitute Area 51 Mexprod, Inc. for DOE 1 and Tortilleria Santa Fe, Inc. for DOE 2.[6]

The original notice identified EHA as the noticing party "acting in the interest of the general public" and Pancho Villa's the alleged violator. The notice identified acrylamide as the toxic chemical, stating it was listed as "a

---

[6] Neither Area 51 MexProd, Inc. or Tortilleria Santa Fe, Inc. is a party to this appeal, so we do not discuss them further unless necessary for context. Our analysis will also focus on the sufficiency of EHA's original notice to Pancho Villa's since Pancho Villa's is the only party in this appeal.

carcinogen" and "a developmental and reproductive toxin" and alleging it was present in "Pancho Villa Farmer's Market Tostadas." The product was further identified by a unique UPC or SKU number. The route of exposure was identified as "dermal absorption, ingestion, and inhalation by consumers" and "occurring since at least August 2020" and "continuing to this day." The notice alleged Pancho Villa's failed to provide "a clear and reasonable warning" of the alleged exposure to acrylamide caused by ordinary use of the product.

The notice specifically stated EHA was represented by the law firm of Nicholas & Tomasevic, LLP. It provided the firm's address and telephone number. And it concluded with directions to contact attorney Jake Schulte of the firm for any questions or discussion.

Except for correcting the names of the manufacturer and distributor, the amended notice contained the same information as the original; and both the original and amended notices attached Appendix A, OEHHA's summary of Proposition 65, and a Certificate of Merit executed by Schulte. However, the original notice attached an earlier version of Appendix A, while the amended notice attached the current version.

### III.

*Judgment on the Pleadings*

In April 2024, Pancho Villa's filed a motion for judgment on the pleadings. It asserted private citizens may not bring an action on behalf of the public interest without *strictly* complying with all of Proposition 65's 60-day pre-suit notice requirements. And, in its view, EHA's notice was deficient in two ways. and those deficiencies compelled dismissal of the action.

9

First, Pancho Villa's argued section 25903 of the regulations required that EHA's notice provide the name, address, and telephone number of " 'the noticing individual or *a responsible individual within the noticing entity*' " (italics added), meaning a person *within* EHA and not EHA's retained counsel.  (See Regs., § 25903, subd. (b)(2)(A)(1).)  This deficiency, Pancho Villa's argued, "deprives [it] of the opportunity to resolve alleged violations directly with the noticing party and thereby discourages 'resolution outside of the courts,' " and of "the chance to assess whether the claims are legitimately being pursued on behalf of the 'public interest' " or "whether EHA is a 'shell entity for lawyer bounty hunters.' "

Second, Pancho Villa's asserted EHA's notice failed to strictly comply with the regulation's requirement of attaching Appendix A, OEHHA's summary of Proposition 65, because the original notice had attached an "outdated version" of Appendix A.  (See Regs., § 25903, subd. (b)(1).)  Pancho Villa's argued that not requiring noticing parties to attach the current version of Appendix A to their notices of violations "would defeat the purpose of OEHHA undertaking formal rulemaking processes to revise the appendix."

EHA opposed, contending its notice substantially complied with the Proposition 65 regulation.  EHA argued the purpose of the regulation's requirement that the notice provide contact information was "to afford the recipient with a point of contact to discuss resolution" and where, as here, the noticing party is represented by counsel, any pre-suit settlement or withdrawal of the notice would necessarily be discussed with counsel.  As for Appendix A, EHA argued the purpose of the requirement was to provide the recipient with "a 'convenient source of general information' regarding Proposition 65."  EHA asserted any "minor technical deviation" of these

10

requirements did not undermine their purposes and were not egregious enough to warrant dismissal.

The trial court agreed with Pancho Villa's. The court found the notices were defective because they provided contact information of EHA's outside counsel instead of " 'a responsible individual within' " EHA. It also held that the original notice was defective because it failed to attach the "more complete and current revision" of Appendix A. As a result, the court dismissed the action.

## DISCUSSION

Our review of all issues in this appeal is de novo because it involves review of an order granting judgment on the pleadings (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672), interpretation of a regulation (*Department of Industrial Relations v. Occupational Safety & Health Appeals Bd.* (2018) 26 Cal.App.5th 93, 100 (*Department of Industrial Relations*)), and determination of whether a Proposition 65's 60-day notice complies with statutory requirements (*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America* (2007) 150 Cal.App.4th 953, 962 (*Kintetsu*)).

## I.

### *Substantial Compliance Doctrine*

The substantial compliance doctrine is commonly understood to mean actual compliance with " ' "the substantial or essential requirements of something," ' " such as a statute or regulation, " ' "that satisfies its purpose or objective even though its formal requirements are not complied with." ' " (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 701 (*Manderson-Saleh*); accord *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332 (*Troyk*) [substantial compliance " ' "means *actual* compliance [with] the substance essential to every

11

reasonable objective" ' " of a statute or regulation].)  Under the doctrine, where there is compliance as to all matters of substance, " ' "technical deviations are not to be given the stature of noncompliance." ' " (*Manderson-Saleh*, at p. 701; accord *Troyk*, at pp. 1332–1333.)  The " 'doctrine gives effect to our preference for substance over form.' " (*Troyk*, at p. 1333.)

The substantial compliance doctrine, however, "does *not* apply at all when a statute's requirements are *mandatory*, instead of merely *directory*."[7] (*Troyk*, *supra*, 171 Cal.App.4th at p. 1333, last italics added.)  "It is only where statutory requirements are accorded 'mandatory' rather than 'directory' effect that failure to comply with a particular procedural step will result in invalidating the . . . action to which the procedural requirement relates." (*Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 394 (*Palo Alto*).)  In essence, strict compliance with procedural requirements is required for provisions with mandatory effect, whereas substantial compliance will suffice for provisions with directory effect.  (*Id.* at pp. 394–395.)  And "[u]nless the intent of the statute can only be served by demanding strict compliance with its terms, substantial compliance is the governing test." (*Id.* at p. 394; see *id.* at pp. 394–395 ["unless a contrary intent is manifestly expressed, such requirements will be deemed directory rather than mandatory"].)

As our high court has explained, "there is no simple, mechanical test for determining whether a provision should be given 'directory' or 'mandatory'

---

7       The cases we discuss here often involve statutory requirements; their principles, however, are equally applicable to regulations.  (See *Manderson-Saleh, supra*, 60 Cal.App.5th at p. 701 [applying the doctrine to regulations of the Regents of the University of California].)

effect.  'In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent.  In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time.  [Citation.]  When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose.' " (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 909–910.)

The "distinction between mandatory and directory does not depend on the literal wording of the statute.  Instead, '[t]he paramount consideration is the objective of the statute.' " (*Manderson-Saleh*, *supra*, 60 Cal.App.5th at p. 703, quoting *Palo Alto*, *supra*, 180 Cal.App.3d at p. 395.)  "Thus, even when a statute uses 'mandatory' terms, substantial compliance with statutory directives will suffice if the purpose of the statute is satisfied." (*Manderson-Saleh,* at p. 703.)  In evaluating whether to designate a statute or regulation as mandatory or directory, "courts focus on its purpose or function." (*Id.* at p. 704.)  If the element is essential to promote the overall design of the statute or regulation, "it is 'mandatory' and less than full compliance is not acceptable. . . .  If not, it is 'directory.' " (*Ibid.,* citation omitted.)  If the directive " 'does not go to " 'the essence' of the particular object sought to be obtained, or the purpose to be accomplished" and a "departure from the statute will cause no injury to any person affected by it," the provision will be deemed directory.' " (*Ibid.*)

## II.

### *Substantial Compliance Is the Governing Test for*
### *Proposition 65's Notice Requirements*

Proposition 65's 60-day notice serves three core functions.  It is to provide information necessary to (1) enable prosecuting agencies to " 'intelligently' " assess whether to investigate and to file an enforcement action on behalf of the public; (2) allow violators "an opportunity to cure the violation" and "at least, prevent the accrual of any further liability for penalties"; and (3) to "defin[e] the scope of the private person's right to sue under the statute."  (FSOR, at pp. 3–4; see *Kintentsu, supra*, 150 Cal.App.4th at p. 964.)  We conclude the failure to provide contact information of "a responsible individual *within the noticing entity*" (Regs., § 25903, subd. (b)(2)(A)(1), italics added) and attachment of an older summary of Proposition 65 do not defeat these overall objectives of the 60-day notice.  Accordingly, we conclude section 25903 of the regulations is to be given directory effect, and substantial compliance is the governing test.

In construing section 25903 of the regulations, "our fundamental objective" in interpreting an administrative regulation is "to ascertain and effectuate the intent of the agency issuing the regulation."  (*Department of Industrial Relations, supra,* 26 Cal.App.5th at pp. 100–101.)  We accord "an administrative agency's interpretation of its own regulation great weight and deference, unless the interpretation is unauthorized or clearly erroneous."  (*Manderson-Saleh*, *supra,* 60 Cal.App.5th at p. 697.)  "This rule recognizes that an 'agency has developed a level of "expertise" in light of its familiarity with the legal and regulatory issues.' "  (*Ibid.*)  We look first to the text of the regulation itself; if it is " ' "clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the [agency's]

14

intent.' " (*Department of Industrial Relations*, at p. 101.) The plain meaning rule, however, " ' "does not prohibit a court from determining whether the literal meaning of a [regulation] comports with its purpose." ' " (*Ibid.*) Last, " '[w]e do not construe a regulation in isolation, but instead read it with reference to the scheme of law of which it is a part, so that the whole may be harmonized and retain effectiveness.' " (*Ibid.*)

In adopting section 25903 of the regulations, OEHHA explicitly noted the three core functions of Proposition 65's notice of violation and set forth the required elements of all notices in subdivision (b)(2) "in order to assure that such notices actually further the[se] purposes." (FSOR, at p. 4.) Subdivision (b)(2) of section 25903 explicitly provides that "[a] notice shall provide adequate information from which to allow the recipient to assess the nature of the alleged violation" and "shall not be interpreted to require more than reasonably clear information, expressed in terms of common usage and understanding, on each of the indicated topics." The agency used the term "reasonably clear" because it wanted to assure the regulations "are not interpreted in a manner that would require the notice to provide information in a manner that is more precise than necessary." (FSOR, at p. 12.)

OEHHA stated these "information requirements" are intended "to ensure that notices provide adequate information necessary for the recipients to evaluate the nature and scope of the alleged violation" and "for public prosecutors to evaluate the merit and significance of the alleged violation." (FSOR, at pp. 8, 7.) The agency further cautioned that "the proposed regulation is not intended to require that highly technical information be provided, to require disclosure of the evidence by which a violation will be proven, or to otherwise *turn the notice requirement into a trap for the unwary*." (*Id.*, at pp. 15–16, italics added.)

15

Regarding the requirement the notice provide "the name, address, and telephone number of the noticing individual or a responsible individual within the noticing entity and the name of the entity" (Regs., § 25903, subd. (b)(2)(A)(1)), OEHHA's only comment was that the "[i]dentification of the party giving the notice is needed to give the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action" (FSOR, at p. 8). As mentioned, one purpose of the notice provisions is to promote dialogue and give the alleged violator an opportunity to cure alleged violations. Direct contact between the noticed entity and the noticing party's principal is not essential to promoting this purpose, or any of the others stated above. Indeed, there is no "detailed and specific" mandate which requires or explains why contact must occur directly between the noticed party and noticing party. The provision is thus given directory effect.

Subdivision (b)(1) of section 25903 of the regulations requires that each notice attach a copy of OEHHA's summary of Proposition 65, or Appendix A. OEHHA explained it adopted this requirement because notices are sent to businesses that may not be familiar with the requirements of Proposition 65 and the noticing party may not describe, or accurately describe, those requirements. (FSOR, at p. 6.) The agency emphasized, however, "[t]he summary is intended only to provide *general information* to the lay person about the provisions of the statute, and does not represent an interpretation of the law." (*Ibid.*, italics added.) It is "not intended to have the force and effect of law, or to obviate the need for competent legal advice. It is simply intended to provide general information to the recipient. Indeed, the summary itself specifically so states." (*Ibid.*) Providing OEHHA's most recently revised summary of Proposition 65, though perhaps preferable, is not

16

essential to the provision's purpose of providing general information. This provision is also given directory effect.

Pancho Villa's cites several cases it contends are examples of how "California appellate courts have consistently enforced th[e] strict compliance standard" for Proposition 65 notice standards. We disagree with this characterization. The parties have not pointed us to a case that holds strict compliance is the governing test for Proposition 65 notice requirements, nor have we found one. It appears no case has addressed this specific question.

In *Yeroushalmi*, *supra*, 88 Cal.App.4th 738, contrary to Pancho Villa's claim, the court did not explicitly apply strict compliance but instead found the notice at issue failed to provide "adequate, or indeed, *any* information to assess the nature of the alleged violation." (*Id.* at p. 746.) This case, unlike *Yeroushalmi*, is not one where one of the requirements was completely absent, such as missing the certificate of merit, or failure to identify the chemical. Thus, *Yeroushalmi* does not support a "strict compliance" standard, rather it focused on whether the information was "adequate."

As another example, *Council for Education & Research on Toxics v. Starbucks Corp.* (2022) 84 Cal.App.5th 879, 900 (*Starbucks*) also did not deal with strict compliance of Proposition 65 notice requirements. Rather, the issue there was whether the plaintiff's description of the coffee products complied with the requirements to encompass claims regarding acrylamide formed by the roasting of plant roots, nuts, and seeds added to coffee. The case did not apply a strict compliance standard to the notice requirements or even discuss strict compliance.

Because we conclude that the Proposition 65 notice requirements are directory, not mandatory, their purpose can be served through substantial compliance, which "means *actual* compliance in respect to the substance

essential to every reasonable objective" of the regulation. (*Stasher v. Harger-Haldeman* (1962) 58 Cal.2d 23, 29.) "But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression . . . should not be given the stature of noncompliance." (*Ibid*.) In other words, "notice must promote and satisfy the objectives of the law" to qualify as substantial compliance. (*Palo Alto*, *supra*, 180 Cal.App.3d at p. 396.)

III.

*EHA's Pre-Suit Notice Substantially Complied with Section 25903 of the Regulations*

As noted, the notice to Pancho Villa's identified EHA as the entity entitled to sue, the alleged violator, the toxic chemical (with greater specificity than is required), the route of exposure, the timeframe of exposure, and the certificate of merit. The notice provided Pancho Villa's with EHA's counsel name and contact number to be contacted for any questions or discussion, and an OEHHA summary of Proposition 65, that while outdated still contained the general summary of the relevant law. We conclude EHA's pre-suit notice actually complied with all matters of substance, and thus any technical deviations will not be treated as noncompliance.

A. *Identification of Noticing Entity with Contact Information*

In furtherance of the objective to promote dialogue and information exchange, notices are required to contain the contact information of a "responsible individual within the noticing entity." (Regs., § 25903, subd. (b)(2)(A)(1).) Here, EHA provided the name and contact information for its outside counsel, rather than somebody "within" the organization, in its notice to Pancho Villa's. Pancho Villa's argues that EHA's approach "[f]rustrate[s] the [r]egulatory [s]cheme." (Boldface omitted.) We disagree.

18

Providing an attorney's contact information does not undermine any of Proposition 65's objectives and substantially complies with the notice requirement.

We have not located any support for the trial court's finding that "[t]he intent behind the pre-suit notice is to enable businesses targeted by Prop[osition] 65 actions to economically and efficiently address concerns raised in the pre-suit notice by directly communicating with the private citizen enforcer." On the contrary, providing attorney contact information meets the OEHHA's stated objective of "giv[ing] the receiving parties an opportunity to contact the noticing party to resolve the issues raised in the notice and to identify who will be entitled to pursue a civil action." By identifying outside counsel, EHA provided "an opportunity" for Pancho Villa's to contact EHA through its counsel. The ability for EHA to exchange information with Pancho Villa's turns on whether EHA's designated contact person has sufficient knowledge of the alleged violation. His or her employment position does not affect whether that core objective is obtained.

Despite the trial court's pronouncement that it "becomes a cumbersome, expensive process if the targeted business is forced to communicate through counsel," the noticing party's retained counsel may, in fact, be in the best position to communicate about the alleged violation. This is because the certificate of merit must be signed "by the attorney for the noticing party, or by the noticing party, if the noticing party is not represented by an attorney." (§ 25249.7, subdivision (d)(1).) The Legislature thus requires represented parties such as EHA to act through their attorneys because drafting the notice is an expertise-dense endeavor involving highly complex regulations. The individual executing the certificate must consult with qualified experts concerning the details of the exposure and evaluate

19

whether the enforcement action is meritorious, thus ensuring they are knowledgeable about the nature and extent of the alleged violation. (*Ibid.*) A retained attorney who consulted with experts is thus well positioned to communicate with alleged violators and public enforcers. Moreover, the public prosecutor does not need the address and phone number of the complaining entity to decide whether to intervene on behalf of the public.

Attorney involvement is also appropriate because actions are generally brought against larger companies. (§ 25249.11, subdivision (b) [notices cannot be filed against a business with less than 10 employees].) Any settlement negotiations with Pancho Villa's would also likely be through the EHA's attorney as settlements are highly technical, involve scientific analysis and multiple legal requirements, and must be approved by the California Attorney General and published on its website. (Cal. Code Regs., tit. 11, §§ 3003, subd. (c) and 3005.)

The trial court found "this requirement ensures that the private enforcer is genuine, and not simply a 'straw person' used by a law firm seeking only to generate legal fees." Pancho Villa's advances this same argument on appeal. But while it is appropriate for a trial court to "ensure that its judgment serves the public interest" in a Proposition 65 action (*Kintetsu, supra,* 141 Cal.App.4th at p. 62 ["In the context of Proposition 65 litigation, necessarily brought to vindicate the public interest, the trial court also must ensure that its judgment serves the public interest."]), there is no indication OEHHA intended noticed parties to undertake this type of inquiry. Further still, Proposition 65 has identified the presence of acrylamide, a known carcinogen, in food may be dangerous to the public, and the notice and complaint here identify products that allegedly contain acrylamide. Thus, irrespective of EHA's motivation in commencing the action, " 'the public

20

always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a "benefit" when illegal private or public conduct is rectified.' " (*Starbucks, supra,* 84 Cal.App.5th at p. 903.)

In arguing that notice defects require dismissal, Pancho Villa's relies on cases involving significant deficiencies that are simply not present here. *In re Vaccine Cases* (2005) 134 Cal.App.4th 438, 453–459, for example, the plaintiffs completely failed to file a 60-day notice containing a certificate of merit. Similarly, *DiPirro v. American Isuzu Motors, Inc.* (2004) 119 Cal.App.4th 966, 975, the plaintiff did not serve the required certificate of merit until after the lawsuit was filed, when the certificate should have been served with the 60-day notice. In *Physicians Committee for Responsible Medicine v. KFC Corp.* (2014) 224 Cal.App.4th 166, 181, the noticing entity's counsel admitted a substantial element of the certificate of merit was missing.

Here, there is no such failure. We conclude EHA's provision of its outside counsel's contact information substantially complied with the notice requirements of Proposition 65.

B.   *Prior Appendix A Version Substantially Complied with Notice Requirement*

Pancho Villa's argues that EHA's attachment of a prior version of Appendix A to its original notice "constitutes a clear violation of the regulation requiring attachment of the current summary document." The trial court similarly found EHA's failure to attach "the more complete and current revision does not even amount to substantial compliance with this pre-suit notice requirement." We disagree.

21

The Appendix A requirement was intended to "furnish the recipient of a notice with background information about the law that it is alleged to have violated." (FSOR, at p. 19.) Appendix A itself states it "is not intended to provide authoritative guidance on the meaning or application of the law." (OEHHA, Appendix A, Office of Environmental Health Hazard Assessment, California Environmental Protection Agency, The Safe Drinking Water and Toxic Enforcement Act of 1986 (Proposition 65): A Summary (May 2017) p. 1.) On the contrary, it has "basic information about the provisions of the law, and is intended to serve only as a convenient source of general information." (*Ibid*.) It directs readers to the statute and OEHHA's implementing regulations for further information. (*Ibid*.)

Consistent with the trial court's concern that notice recipients "are provided with immediate access to a complete summary of the applicable law," both versions of Appendix A attached to EHA's notices accomplish the goal of providing basic information to the recipient of a notice of violation and guiding them to further, more formal authority.[8] The Appendix A that EHA attached to its notice provided Pancho Villa's with the requisite summary of the Act's implementing regulations and directed it to more formal authority. In doing so, it accomplished the notice provision's central purpose of

---

[8] We find no evidence in the record to support Pancho Villa's assertion and the trial court's claim that "[m]any businesses targeted by Prop[osition] 65 actions are small, family owned and do not have the benefit of retained or in house counsel." As noted previously, actions are generally brought against larger companies because notices cannot be filed against businesses with less than 10 employees. (§ 25249.11, subd. (b).) In any event, the version of Appendix A attached to EHA's original notice provided the requisite summary of the Act's implementing regulations and directions to more formal authority.

facilitating information exchange by giving Pancho Villa's a basic overview of Proposition 65 and directing it to "more specific guidance on compliance."

Furthermore, as Pancho Villa's acknowledges, neither the Act nor its implementing regulations specify that the most current version must be attached to a party's notice of violation. Proposition 65 itself simply requires that "the notice of the alleged violation shall include a certificate of merit." (§ 25249.7, subd. (d)(1).) Because California voters, the Legislature and OEHHA have not required the current version, or any specific version, of Appendix A, it would be contrary to the statute's remedial purpose to invalidate a Proposition 65 action brought in the public interest because a notice attached an earlier version of OEHHA's summary of Proposition 65.

In granting Pancho Villa's motion for judgment on the pleadings, the trial court noted that Appendix A attached to Pancho Villa's notice was superseded by a May 2017 revision. In the court's reading, the May 2017 revision contained "additional information regarding: a grace period, businesses with 9 or fewer employees, exposure to naturally occurring chemicals in food (particularly relevant here), and special compliance procedure for a private party action based on specified types of exposures." While the trial court is correct that the May 2017 revision contained this additional information, there is no evidence in the record the information was "particularly relevant here," as Pancho Villa's asserts in its respondent's brief. Pancho Villa's makes no argument the omitted information was applicable to the exposures alleged by EHA.

The only case the parties cite addressing the Appendix A requirement is *Kintetsu*, *supra*, 150 Cal.App.4th 953. There, however, the noticing entity completely failed to attach Appendix A. (*Id.* at pp. 973–974 [the noticing entity's "failure to follow this requirement renders the notice . . . invalid

23

because the notice fails to satisfy a mandatory prerequisite to a citizen lawsuit."].)  There is no such failure here.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions to the trial court to vacate its order granting Pancho Villa's motion for judgment on the pleadings and enter a new order denying it.  EHA is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


DO, J.

WE CONCUR:


McCONNELL, P. J.


BUCHANAN, J.